Lynch v. The Utica Insurance Company.

---

LYNCH and others, *appellants,* and THE UTICA INSURANCE COMPANY, *respondents.*

A *judgment creditor* is entitled to a decree of a court of chancery, directing satisfaction of his judgment out of an *equitable estate* or *interest* of the debtor in property held *in trust* for the debtor, and *not* the subject of sale by execution at law, *in preference to an assignee* to whom the debtor assigns his equitable estate or interest for the benefit of all his creditors, when such assignment does not take effect as an operative conveyance *until after the docketing of the judgment.*

An equitable estate or interest in lands is not the subject of sale by execution at law, within the *statute of uses,* (1 R. L. 74, § 4,) where others besides the judgment debtor have an equitable interest in the lands ; to authorize a sale in such a case, the debtor must have the *entire* equitable interest.

Whether a *purchaser,* who acquires the *legal estate* as well as the *equitable interest* of a judgment debtor, in property held *in trust* for the debtor, and which *is* the subject of execution at law, obtains thereby a preference over the judgment creditor, where the purchase is made *with knowledge* of the existence of the judgment, but previous to the suing out of an execution thereon, *quere.*

APPEAL from chancery. The respondents, in March, 1831, filed a bill against the appellants, the principal object of which was to obtain a decree declaring certain judgments obtained by the respondents against *James Lynch,* a lien upon and directing the same to be satisfied out of certain *equitable interests* [237] created in his favor by the will of his father Dominick Lynch. The respondents stated in their bill that on the 27th February, 1829, four judgments were docketed in their favor against James Lynch, amounting together to about the sum of $33,000, and that on the 10th January, 1827, James Lynch executed to them a *covenant,* whereby, after reciting that he was indebted to them by bond of the same date with the covenant, in the sum of $5000; that he had deposited with them as collateral security for the payment of the bond, 60 shares of the stock of the Oneida Iron and Glass Manufacturing Company, together with a note for $1959.45, given by one Henry Lynch, and endorsed by himself and one Alexander Lynch ; that he was entitled to a distributive share of the real estate at Rome, which belonged to his deceased father ; and that it was intended to effect a division of the same among the heirs of his father ; he covenanted and agreed that as soon as such division was effected, he and his wife would execute a mortgage upon a proportion of the same, which should be allotted to him, of at least $10 000 value, to secure the payment of the above bond, *as a substi-*

Lynch v. The Utica Insurance Company.

*tute* for the *collateral security* above specified. They then stated that on the 27th July, 1823, Dominick Lynch, the father of James Lynch, made his last will and testament, whereby, after bequeathing certain personal property, he gave and devised all the rest and residue of his estate *to his executors* in the will named and to their heirs and assigns *in trust*, 1. To pay all his just debts; 2. To raise the sum of $60,000 and invest the same in certain securities, and out of the income thereof to pay his wife an annuity of $3 000, and to re-invest any surplus there might be; 3. To raise the sum of $10,000 and to pay one half thereof to his daughter Louisa, and the remaining half to his son Edward; 4. The testator directed that after the payment of his debts, the investment of the $60,000, and the payment of the legacies to Louisa and Edward, the residue of his estate, real and personal, should be divided *into eight equal parts*, one of which parts he gave to his son *James Lynch*; and 5. He directed that after the death of his [238] wife seven eighths of the fund of $60,000 should be divided among his seven children, of whom James Lynch was one, the remaining one eighth part he having by a previous clause authorized his wife to dispose of by will; and that the testator died in 1825. The respondents further stated, that James Lynch, by a certain indenture in writing under his hand and seal, *purporting to bear date 25th February*, 1829, for the consideration of one dollar, as expressed therein, granted and conveyed to one *Seth B. Roberts*, all his right, title, claim, demand and interest of, in and to, any and all moneys, lands, personal or real estate, which he was then or which he thereafter might become entitled to by virtue of the will of his father Dominick Lynch, either at law or in equity, *in trust*, to sell and dispose of the same, and apply the proceeds, 1. To the payment of certain notes, &c., upon which Roberts and others stood bound as endorsers; 2. To pay all notes and accounts due to tradesmen; 3. To pay the respondents $2 500, for which he had given them a covenant; 4. To pay all other debts due from him; and 5. To pay over such surplus as might remain. They charged that the assignment was ante-dated, and if not ante-dated, that it was executed in contemplation of the judg-ments, with the intention to defeat, delay, and defraud them in recovering their just demands; and generally that the assignment was fraudulent and void. The respondents prayed that the executors of Dominick Lynch might be compelled to execute the trusts of the will, and that upon such division as was directed by the will, that James Lynch might be compelled to execute to them a mortgage, in pur-suance of the stipulations of the *covenant* of the 10th January, 1827, to bear date as of that day, or else that the *covenant* be decreed a mortgage as of the day of its date; that their *liens*, and those of all other judgment creditors who should come in and make themselves parties to the suit, be established and declared according to their rightful priorities, upon the share which, upon a sale of the estate of Dominick Lynch, might be allotted to James Lynch; and also upon the share of the fund of $60,000, which upon the death of the widow of Dominick Lynch, would be the share or proportion of James Lynch. The bill con-[239] tained other matters in reference to securities taken from James Lynch, and other transactions which it is deemed unnecessary here to state, in reference to the principal question decided in this cause.

James Lynch, Roberts, and various creditors of Lynch, made parties in this suit, answered that the debts provided for by the *assignment* were justly due and owing; but it was admitted by both Lynch and Roberts, that the assignment *was not delivered to Roberts*, nor had he any knowledge of its existence, *until after the docketing of the judgments* obtained by the respondents against Lynch. Roberts, however, *denied all notice or knowledge of the judgments* in favor of the respond-ents until after the delivery of the assignment to him, and no proof of notice was exhibited by the respondents. It appeared from the answers and from the proofs taken in the cause, that *in December*, 1829, Roberts filed a bill in chancery against the executors of Dominick Lynch for a division of the estate, and by a decree of the vice chancellor of the first circuit, a division of the estate made by a master

Lynch v. The Utica Insurance Company.

was confirmed and certain portions thereof directed to be conveyed to Roberts. The executors were subsequently restrained by an injunction from executing the conveyances, but the injunction was afterwards modified so as to allow of the execution of the conveyances, provided the same should be deposited in the office of the assistant register of the court of chancery; and the conveyances were accordingly executed and deposited.

Upon this state of facts the chancellor decreed, 1. That the *covenant* of the 10th of January, 1827, should be deemed an *equitable mortgage*, and that the complainants were entitled to have payment of the amount due thereon out of that part of the estate of Dominick Lynch, which had been conveyed to Roberts; 2. That the judgments of the respondents and of Robert Tillotson, a creditor of James Lynch, were *equitable liens* upon the estate and interest of Lynch in the same premises, according to the date of the docketing of such judgments, to be paid in the order of priority; and 3. The chancellor directed a sale of the premises, and that the proceeds be applied in payment of such judg-  [240] ments and of the balance due the complainants, after discharging the costs of the suit. From this decree, Lynch and Roberts appealed.

The following opinion was delivered by the chancellor, so far as respects the principal questions in this case:

By the CHANCELLOR. The interest of James Lynch, under the will of his father, was an equitable estate merely; the legal estate being vested in the executors, as trustees under a trust, which was valid as the law was, at the time of the creation of the trust. This was an interest which perhaps might have been seized and sold on an execution under the provisions of the 4th section of the act concerning uses. (1 *R. L.* 74.) The judgments, however, did not bind the equitable interests of the debtor in the land from the time of the docketing, but only from the issuing of the execution, (*Kellogg* v. *Wood,* 4 *Paige,* 619; *Lodge* v. *Lyseley,* 4 *Sim. R.* 70; 1 *Atk. on Conv.* 517;) and if Roberts had been a *bona fide* purchaser for a valuable consideration paid, and had obtained an assignment of the equitable interest of Lynch, without notice of the judgments, he would have been protected. In this case, however, the judgments were entered some time before he had notice of, or consented to accept, the assignment. And the assignment being merely voluntary, to secure antecedent debts, Roberts cannot be considered a *bona fide* purchaser so as to defeat the complainants' rights to levy their judgments out of the equitable freehold of the judgment debtor, although he might not have had actual notice of the judgment at the time he accepted that assignment. In *Forth* v. *The Duke of Norfolk,* (4 *Mad.* 504,) Sir John Leach, V. C., says: " A judgment creditor has at law, by the statute of frauds, execution against the equitable freehold estate of the debtor in the hands of the trustee, provided the debtor has the whole beneficial interest; but if he has left a partial interest only in his equitable freehold estate, the judgment creditor has no execution at law, though he may come into a court of equity and claim there the same satisfaction out of his equitable interest, as he would be entitled to at law, if it [241] were legal. Every voluntary assignee of this equitable interest of the debtor, will be in the same situation with respect to the claim of the judgment creditor, as the debtor himself was. Every assignee for valuable consideration will hold this equitable interest discharged of the claim of the judgment creditor, unless he had notice of it before his consideration paid." In this case, the assignment being merely to secure debts, and no consideration being paid, the equity of the complainant is prior in time, and therefore stronger in right. This, however, is a question which still remains unsettled in the English courts of equity, as appears from the recent edition of Sugden's Treatise on the Law of Vendors. (*Sugden on Vend. ed.* 1830, *p.* 480, 540, 6,) And I am not clear that I am right in the view I have taken of the question. I trust, therefore, that the same will be put at rest, either the one way or the other, by a decision of the court of dernier resort. The result at

Lynch *v.* The Utica Insurance Company.

which I have arrived, however, renders it unnecessary for me to go into the question of the supposed fraud in the assignment itself.

The equitable mortgage to the complainants is entitled to a priority in payment to the extent of the interest of James Lynch in the lands at Rome ; and if in the partition, the fund upon which the complainants had a specific lien in equity, has been assigned to others, they must be remunerated *pro tanto* out of other lands assigned as his portion of the estate. (After stating which of the defendants are entitled to costs out of the trust estate before payment of the complainants, the chancellor proceeds thus :) " The costs of the complainants and the balance secured by the equitable mortgage must next be paid. Then the judgment held by Robert Tillotson, and after that the balance of the judgments of the complainants ; and so much of the trust property as is necessary must be sold and applied for that purpose."·

The case was argued in this court by

*M. T. Reynolds,* for the appellant.

*M. Hoffman* and *S. A. Foot,* for the respondents.

[242]       *Points on the part of the appellants.*

I. The ·equitable interest of J. Lynch in the estate of D. Lynch, devised to his executors, was not bound by the judgments of the complainants nor by the executions issued thereon, nor can those judgments or executions be considered as liens in a court of equity, the trust having been created by a person other than the debtor himself. (2 *R S.* 174.   2 *Atk.* 107.   1 *Johns. C. R.* 54.   17 *Johns. R.* 355.   16 *id.* 197.   3. *Paige,* 478.)

II. If the complainants could legally set up any lien as to this equitable interest, it could only be from the time of the filing of the complainant's bill, previously to which time the assignment to Roberts had been duly executed and had become effectual. (2 *Paige,* 337, 567.   1 *id.* 639.   3 *Atk.* 357.   2 *Johns. Ch.* 307.   2 *Gallison,* 529.   4 *Johns. Ch.* 529.   3 *Paige,* 320.   9 *Wendell,* 560.   *Sellon's Decs.* 106.)

III. The assignment to Roberts being previous to the filing the bill in this cause, was effectual as to the personal estate. (*Same authorities as on second point.*)

IV. The complainants by their proceedings and arrangements in respect to the note of Henry Lynch, and sixty shares of the stock, waived all right to call for the specific execution of the covenant, bearing date the tenth of January, 1827, and are not entitled to set up the same as an equitable mortgage against the other creditors of James Lynch, or at least should be charged with the whole amount of Henry Lynch's note, or with the actual value of the property purchased in by them at the mortgage sales. (11 *Johns. R.* 534.   18 *id.* 7.   3 *Ves. & Beame,* 197.   13 *Johns. R.* 54.)

V. The execution of the assignment by Roberts on the 25th of February, carried into effect, so far as Thos. Tillotson's interest was concerned, an agreement and assurance previously made and reiterated by J. Lynch, that he would secure and indemnify him, and created a prior equity to that which plaintiffs claim by judgments, confessed to them on the 27th of February, 1829. (2 *P. Wms.* 427.   3 *Ves.* 582.   3 *Depau.* 74.   2 *Bal. & Beat.* 234.   5 *T. R.* 420.)

[243]       *Points on the part of the respondents.*

I. The covenant mentioned in the pleadings, dated January 10, 1827, executed by the defendant, James Lynch, to the complainants, is an equitable mortgage, and entitles the complainants to a decree to·have a legal mortgage executed pursuant thereto, to take effect from the date, or to a decree that the same is a lien upon the land conveyed to Lynch, as his share of his father's estate, or for payment in priority out of the avails of such share of said estate. (*Hawley* v. *Vernon,* 2 *Cox Cas.* 13.   *Becket* v. *Cradley,* 1 *Br. Ch. R.* 353.   *Legard* v. *Hedges,* 1 *Ves. sen.* 477.   *Bunn* v. *Bunn,* 3 *Ves.* 582.   *Case of Sir John Simeon,* 2 *Sch. & Lefroy,* 381.   *Burgh* v. *Francis, Finch. R.* 28.   *Ex parte Howe,* 1·

Lynch v. The Utica Insurance Company.

*Paige,* 125.    *Taylor* v. *Wheeler,* 2 *Vern.* 564.    *Sowden* v. *Sowden,* 1 *Br. Ch. R.* 583, *Belt's ed. and note.    Cases in the note to Lechmere* v. *Carlisle,* 3 *P. Wms.* 228.    *Amer. Ins. Co.* v. *Coster,* 3 *Paige,* 334.)

II. If the right and interest of Lynch under his father's will in the lands and premises was a trust estate, the judgments mentioned in the complainants' bill were and are, in a court of equity, as much a lien upon his share of such lands, as they would be in a court of law, if the legal estate had been in. him, at the time of docketing such judgments.    A trust estate is in equity bound by a judgment as entirely as a legal estate is at law, except as to *bona fida* purchasers for valuable consideration without notice ; and as against such purchasers is a lien, if they have actual notice.    (*First: Cruise's Dig. tit.* 1, § 47, 57.    *Hopkins* v. *Hopkins, Cas. Temp. Talbot,* 52.    *Clairburne* v. *Inglis, West's R.* 226.    *Wykham* v. *Wykham,* 18 *Ves.* 413.    *Shrapnel* v. *Vernon,* 2 *Br. Ch. R.* 268.    *Langley* v. *Sneyd,* 1 *S. & St.* 45.    *Lewis* v. *Zouch,* 2 *Sim. R.* 2.    *Claibourne* v. *Scarfe,* 1 *Atk.* 605.    1 *West,* 223.    *Second : Reeves' Hist. Co. Law,* 1, *p.* 322.    *Litt.* 459, 551, 552.    *Co. Litt.* 271, *b. n.* 231.    *Basher* v. *Kent,* 2 *Mod.* 251, *per Popham.    Statute,* 19 *Hen.* 7, *c.* 15.    4 *Reeves' Hist.* 139.    *Brookes's Abr. tit. Elegit, pl.* 11.    *Statute of Uses,* 27 *Hen.* 8, *c.* 10.    *Chudleigh's case.    Saund. on Uses,* 405.    4 *Reeves' Hist. Co. Law,* 353.    *Third : Tyrrell's case, Dyer,* 151, *A.    Burgess* v. *Wheate,* 1 *Eden,* 194.    *Margin of the Statutes at large,* [244] 19 *Hen.* 7, *c.* 15, *vol.* 2, *p.* 103.    [Statute not printed.]    4 *Reeves' Hist.* 139.    *Statute,* 29 *Car.* 2, *c.* 3, *p.* 10.    1 *R. L.* 1813, *p.* 74.    *Harris* v. *Bowker,* 4 *Bing.* 96.    *Harris* v. *Pugh, id.* 335.    *Bogart* v. *Perry,* 1 *Johns. Ch. R.* 56.    17 *Johns. R.* 355.    *Doe* v. *Greenhill,* 4 *Barn. & Ald.* 691.    *Brown* v. *Greaves,* 4 *Hawkes,* 345.    *Ontario Bank* v. *Root,* 3 *Paige,* 478.    *Fourth : 4th Inst.* 85.    *Burgess* v. *Wheate,* 1 *Eden's R., Jones and Lady Rensbie.    Gilbert on Uses,* 19.    *Viner's Abr.* 185.    *North* v. *Champernoon,* 2 *Ch. Ca.* 78.    *Salvin* v. *Thornton, Ambler,* 545.    *Willis* v. *Worrall,* 1 *Atk.* 476.    1 *Inst.* 18, *b.*    1 *Coke,* 121, *b.    Adlington* v. *Cann,* 3 *Atk.* 151.    *Wagstaff* v. *Wagstaff,* 2 *P. Wms.* 258.    2 *Ch. Ca.* 78.    1 *Vernon,* 14, *note* 1.    *Watts* v. *Ball,* 1 *P. Wms.* 108.    *Burgess* v. *Wheate,* 1 *Eden,* 223, 224, 227, 248, 249, 250.    *Wright* v. *Cadogan,* 2 *Eden,* 258.    *Banks* v. *Sutton,* 2 *P. Wms.* 713.    *Cholmondely* v. *Clinton,* 2 *Jac. & Walk.* 147.    *Cudworth* v. *Hall,* 3 *Dess.* 261.    *Fifth : Stevens* v. *Olive,* 2 *Bro. Ch. R.* 90.    *Davison* v. *Foley, id.* 209.    *S. C.* 3 *id.* 598.    *Raithby's note to Angell* v. *Draper,* 1 *Vernon,* 399 ; *Phipps* v. *Bowater, there cited.    Stillman* v. *Ashdown,* 2 *Atk.* 608.    *Dillon* v. *Plasket,* 2 *Bligh's N. S.* 239.    *Lewis* v. *Zouch,* 2 *Simons,* 388.    *Silver* v. *Norwich,* 3 *Swanst.* 112, *n. b.    Tanfield* v. *Lee,* 2 *Russel,* 149.    *Funstall* v. *Trappes,* 3 *Simons,* 286.    *Preston on Abstracts,* 326.    *Porth* v. *Duke of Northumberland,* 4 *Mad.* 503.    *Churchill* v. *Grove, Nelson's R.* 89, *S. C.*    2 *Freeman,* 176.    *Haleys* v. *Williams,* 1 *Leigh,* 140.    *Gouts* v. *Walker,* 2 *id.* 276.    *Sixth : Rev. Code, Virginia,* 1819, *vol.* 2, *p.* 51, § 8.    *Ibid. vol.* 1, *p.* 525.    *Clairborne* v. *Henderson,* 3 *Hen. & Mumf.* 3.    *Chapman* v. *Armistead,* 4 *Mumford,* 396.    *Heth* v. *Cock,* 1 *Rand.* 346.    1 *Brev. Dig. Laws, S. Car. p.* 174, § 31, 35.    *Seventh : Cholmondely* v. *Clinton,* 3 *Mer.* 301.    *Burgess* v. *Wheate,* 1 *Eden,* 225.    *Waters* v. *Stewart,* 1 *Caines' Cas. in Error,* 47.    *Shrapnel* v. *Vernon,* 2 *Bro. Ch. R.* 268.    *Lewis* v. *Zouch,* 2 *Simons,* 388.    *Claibourne* v. *Scarfe,* 1 *Atk.* 605.    *West's R.* 223.    *Lyster* v. *Dolland,* 3 *Bro. C. C.* 478.    *Partridge* v. *Brere,* 1 *Dowl. & Ryl.* 272.    *Brace* v. *Duke of Marlborough,* 2 *P. Wms.* 490.    *Rowe* v. *Brent, Dick.* 150.    *Sharp* v. *Earl of* [245] *Scarborough,* 4 *Ves.* 541.    [*Case of Moses* v. *Murgatroyd,* 1 *Johns. Ch. R.* 119, erroneous.]    *Symmes* v. *Symonds,* 1 *Bro. P. C.* 66, 1703.    *Robinson* v. *Hartington, Seaton's forms of Decrees,* 128, *Eng. paging.    Eighth : Trelawney* v. *Booth, West,* 441.    *Blatch* v. *Wilder, id.* 324.    *Mainwaring* v. *Elliker, Bowen* v. *Prentiss, cited Seaton's forms of Decrees,* 88, *Eng. ed.    Wride* v. *Clark, id.* 102, *Eng. ed.    Ninth :* [*Jickling's Analogy of Estates, preface.    Edmonston* v.

Lynch v. The Utica Insurance Company.

*Lyde*, 1 *Paige*, 640.] *Bogart* v. *Perry*, 1 *Johns. Ch. R.* 54. *Trelawney* v *Booth*, *West*, 441. *Casburne* v. *Scarf*, (or *Inglis*.) *West*, 221.)

III. The defendants, Roberts and the other parties, provided for in the assign ment mentioned in the pleadings, were not purchasers for valuable consideration, and such assignment, not being delivered till after the docketing of the judgments, cannot (even if not fradulent and void) take preference over the judgments; the lien in equity of the judgments was anterior to any right in equity under such assignment. (*Reeve* v. *Roberts*, 4 *Mad. R.* 357. *Bay* v. *Coddington*, 5 *Johns. Ch. R.* 54. *Cornell* v. *Tradesmen's Bank*, 1 *Paige*, 131. *Smith* v. *Henry*, 1 *Hill's R.* 24. *Donaldson* v. *Bank of Cape Fear*, *Dev. Eq. R.* 106. *Hunter* v. *Simrall*, 5 *Litt. R.* 62. *Lucas* v. *Mitchell*, 3 *A. K. Marsh.* 244. *Mower* v. *Kip*, 2 *Ed. R.* 165. *Jackson* v. *Myers*, 11 *Wendell*, 536. 2 *Shep. Touch.* 57. *Jackson* v. *Richards*, 6 *Cowen*, 618. *Jackson* v. *Perkins*, 2 *Wendell*, 317. *Jackson* v. *Dunlap*, 1 *Johns. Cas. in Error*. *Betts* v. *The Union Bank of Maryland*, 1 *Harr. & Gill.* 175. *Herbert* v. *Herbert*, 1 *Breese's Ill. R.* 282. 13 *Viner*, 25, *pl.* 7. *Cook's Adm'r* v. *Hendricks*, 4 *Monroe*, 503. *Maynard* v. *Maynard*, 10 *Mass. R.* 458. 12 *id.* 460.)

IV. The assignment could only take effect, and transfer a right, from the time of its acceptance; it was not accepted (except by the defendant Roberts) until the answers were filed to the original bill in this cause, nor by the defendant Roberts, until the month of July, 1829; nor had Roberts any knowledge of the same until the month of March, 1829, after the docketing of the judgments; [246] and further, if such assignment had been duly delivered to and accepted by Roberts on the day it bears date, the judgments would be entitled to priority, by virtue of their taking effect as against such assignment, from the first day of the term. (*First: Cunningham* v. *Freeborn*, 11 *Wendell*, 249. *Second: Bragner* v. *Langmead*, 7 *T. R.* 20. 3 *Salkeld*, 212. *Wynne* v. *Wynne*, 1 *Wilson*, 39. *Griswold* v. *Stewart*, 4 *Cowen*, 457. *Barnes*, 212. *Robinson* v. *Tonge*, 3 *P. Wms.* 397. *As to lands:* 1 *Roll's Ab.* 892, *fol.* 13. *Brook's Ab. Elegit*, 17, 19. 1 *Brownlow*, 38. *Graves* v. *King*, 8 *Mod.* 310. *Stanford* v. *Cooper*. *Cro. Car.* 102. *Nichols* v. *Chapman*, 9 *Wendell*, 454. *Third: Statutes*, 29*th Car.* 2, ch. 9, § 14, 15. 4 *Wm. & Mary*, ch. 20, § 2. 1 *R. L.* 1813, *p.* 500, § 2, 3. *Fourth: Mower* v. *Kip*, 2 *Ed. R.* 170. *Dickerson* v. *Tillinghast*, 4 *Paige*, 216. *Mutual Ass. Society* v. *Stannard*, 4 *Munford*, 538. *Coutts* v. *Walker*, 2 *Leigh*, 276.)

V. The interest of the said James Lynch, in and to the lands in question was a legal estate, and was in him at the docketing of such judgments, and the lien thereof is in like manner prior, and to be preferred to any title under the transfer and assignment. (*First: Shaw* v. *Wright*, 1 *Eq. Ab.* 184. *Trent* v. *Harring*, 7 *East*, 97. *Oates* v. *Markham*, 3 *Burr.* 1686. *Second: Doe* v. *Simpson*, 9 *East*, 167. *Doe* v. *Woodcock*, 5 *Taunt.* 383. *Doe* v. *Player*, 1 *Barn. & Cres.* 336. 2 *Dowl. & Ryl.* 480. *Goodtitle* v. *Whitby*, 1 *Burr.* 229. *Doe* v. *Hicks*, 7 *T. R*, 433. *Curtis* v. *Price*, 12 *Vesey*, 89. *Third: Morrant* v. *Gouch*, 7 *Barn. & Cres.* 206. *Fourth: Houston* v. *Hughes*, 6 *id.* 403. *Doe* v. *Harris*, 2 *Dowl. & Ryl.* 36. *Better reported*, *Fletcher on Trustees*, *p.* 21. *Jones* v. *Morgan*, 1 *Br. C. R.* 206. *Fletcher*, *p.* 21. *Law. Lib. vol.* 10. *Keene* v. *Dandon*, 8 *East*, 248. *Paddy* v. *Maddin*, 4 *id.* 496. *Loveacres* v. *Blight*, *Cowper*, 352. *Trent* v. *Trent*, 1 *Dow P. C.* 102. *Oates* v. *Markham*, 3 *Burr.* 1685. *Fifth: Dyer*, 373, *pl.* 14. 1 *Inst.* 374. *Smith* v. *Angell*, *Lord Raymond*, 785. *Carthew*, 129. *Bellow* v. *Rowden*, 2 *Saunders*, *p.* 7, *n.* 4. *Law of Executions*, *p.* 161, 162, 263. *Williams* v. *Amory*, 14 *Mass. R.* 20. *Id.* 404. *Den* v. *Hilman*, 2 *Halst. R.* 187. *Kelly* [247] v. *Morgan*, 2 *Yerg.* 440. *Harris* v. *Maxwell*, 2 *Mott & McCord*, 347. *Jackson* v. *Town*, 4 *Cowen*, 602. *Sixth: Lillard* v. *McGee*, 4 *Bibb*, 212. *Petit* v. *Shepherd*, 5 *Paige*, 493. *Wiswall* v. *Hall*, 3 *id.* 313. *Grandin* v. *Le Roy*, 2 *id.* 509.)

VI. The transfer is wholly fraudulent and void, and is set up to impede the re-

Lynch v. The Utica Insurance Company.

covery under such judgments, and should be set aside. (*First: Cadogan* v. *Kennet, Cowper*, 434.  *Merrill* v. *Meachum*, 5 *Day*, 341.  *Hyslop* v. *Clark*, 14 *Johns. R.* 458.  *Pitchtock* v. *Lyster*, 3 *Maule & Selwyn*, 371.  *Second: Wakeman.* v. *Grover*, 11 *Wendell*, 187, 203.  *Wilt* v. *Franklin*, 1 *Binney*, 525.  *Third: Hyslop* v. *Clark*, 14 *Johns. R.* 458.  *Lush* v. *Wilkinson*, 5 *Vesey*, 384.  *Montague* v. *Sandwich*, cited 12 *Vesey*, 148.  *Reade* v. *Livingston*, 3. *Johns. Ch. R.* 501.  *Damon* v. *Bryant*, 2 *Pick.* 412.  *Ilvy* v. *Miswanger*, 2 *McCord's Ch R.* 522.  *Locke* v. *Coleman*, 4 *Monroe*, 322.  *Thompson* v. *Dougherty*, 12 *Serg. & Rawle*, 451.)

After advisement, the following opinion was delivered :

By Chief Justice NELSON.  That the covenant of the 10th January, 1827, operated as an equitable mortgage in the contemplation of a court of equity, has not been controverted; but it was insisted on the argument, that the respondents, by exacting other security on delivering up the note of H. Lynch and the stock, when the covenant itself was intended as the only substituted security, have forfeited their right to a specific execution, as against the other creditors ; or, if that should be deemed too extravagant a pretension, that at least they should be charged with the nominal amount of the substituted security, though a less sum has been realized.  The answer to all this was given below, that the new securities were taken with the knowledge and approbation of Lynch, the appellant, the only person interested at the time, and without any intention to cancel his covenant, and for aught that appears, the collection of the securities has been enforced by the ordinary process, with the exception of the Hoagland mortgage.  One lot covered by that mortgage, was released for $300, on a private arrangement ; if at a sacrifice, which I do not understand to be urged, an [248] allowance should be made before the master.

It would be idle to stop for a reference to authorities to show, that the interest which Lynch took under the will of his father, was but *an equitable estate*, the legal estate being vested in the executors in express terms, and for the obvious intent of better enabling them, as trustees, to execute the several trusts thereby charged.

A question was made upon the argument, though not much discussed, viz. : whether this *interest* or *estate* was liable to be seized and sold upon execution under the 4th § of our statute of uses, (1 *R. L. of* 1813, *p.* 74,) which was taken from and is a copy of 22 *Car.* 2, *ch.* 3, § 1C.  If it was thus liable, then the remedy in equity will become somewhat more perplexed and doubtful than it otherwise need be, because the omission to seize and sell at law, affords ground for contending that the judgments have thereby lost priority over a subsequent *bona fide* purchaser, or an encumbrancer, especially without notice, as in the present case.  The 4th § provides that the sheriff, upon any suit on any judgment, may make and deliver execution unto the party suing, of all such lands, &c., as any other person is seized or possessed, to the *use* of, or *in trust for* him against whom execution is sued, the same as the sheriff might, if the defendant in the execution had been seized of the land of such estate, as the trustee is seized of, in the use or trust, *at the time of the execution sued ;* and the lands, by force and virtue of the execution, shall accordingly be held and enjoyed, *freed and discharged* of all encumbrances of such persons as are so seized and possessed, to the use, or in trust for the defendant in the execution.  This statute, as far as it goes, changed the common law, and made a trust, before cognizable in a court of equity only, the subject of a legal proceeding.  But in making the lands liable to judgments against the *cestuique trust*, as the statute only authorizes the sheriff to take such as the trustees are seized of " *at the time of the execution sued out*," it has been held, that if they have conveyed away the lands before *execution comes to the sheriff*, though they were seized at the rendition of the judgment, the lands cannot be taken ; so that at law while the judgment binds the *legal estate* of a party from the time [249]

Lynch v. The Utica Insurance Company.

it is docketed, it only affects his trust property at the time of execution sued out. This was so decided in *Hunt* v. *Coles*, (1 *Comyn*, 226,) and which has since been followed, (*Hains* v. *Pugh*, 4 *Bing*. 335.) If this trust, then, falls within the statute, the sheriff should have seized and sold the interest of Lynch on the executions that have heretofore been issued. This would at once have cut short all the difficulties in which the case would seem now to be involved; the remedy was as simple and direct as if he had been the owner of the legal estate, and the judgments a lien thereon; but I do not entertain a doubt that the estate of Lynch under the will, is an interest that could not have been sold on execution within the statute. It is settled according to several authorities, and one of them in this court, that the statute only extends to clear and simple trusts for the benefit of the debtor. (17 *Johns. R.* 351. 1 *Johns. Ch. R* 52. 4 *Barn. & Ald.* 648. 4 *Bing.* 96.) In *Bogart* v. *Perry*, Spencer, Ch. J., said that it was intended to subject to execution the real estate or hereditaments of a person having the entire interest therein, but which was nominally and formally vested in another person. The case in *Bingham* is not unlike the present one. There the lands were vested in trustees in trust for the judgment debtor, subject to £10.000 to be raised for another, and which had not yet been raised. The court held, that the interests of the *cestuique trust* was not liable within the statute, as it was not simply the debtor's, but held jointly with another, (the person entitled to the portion of £10,000.) Here the interest is held jointly with three others: the mother, Edward and Louisa. $60,000 was to be raised and invested, to raise the annuity for the first, and $10,000 as a portion for the other two. These were charges upon the whole estate, and the equitable interests in the eight shares subsequently devised, are of course subject to them; these three hold an interest in the estate jointly with the defendant, Lynch, to the amount of the annuity and portions. Then without any authority, [250] the language of the statute would be decisive; for after providing for the seizure and sale, it declares that the lands "by force and virtue of such execution shall accordingly be held and enjoyed freed and discharged of all incumbrances" of the trustees. In case of a sale, therefore, the executors would be divested of all interest in and control over the share of Lynch, and *that* freed and discharged from the annuity, portions, debts, &c. This part of the statute is so explicit that it has uniformly been held not to apply where the lands in which the debtor had an equitable interest were encumbered with other unexecuted trusts.

If I am right in the foregoing conclusion, then the question referred to by the learned chancellor, and upon which he has expressed a hesitating opinion, does not necessarily arise in the case. The question will be found well stated and discussed by Mr. *Sugden*, in his valuable treatise on the *Law of Vendors*, p. 339, ed. 1828; by Mr. *Powell, on Mortgages*, p. 616, 623; and more briefly by Mr. *Coote*, a recent writer on the same subject, p. 71. In order to present it distinctly, for I do not intend to discuss it, it is necessary to premise, that in chancery, a mortgage, if seized of the legal estate, may buy in the equity of redemption at private sale, disencumbered of judgments against the mortgagor, intermediate the giving the mortgage and time of the purchase, in the absence of notice. The reason given is this: that by the contract of purchase of the equity of redemption, he acquires an equal equity with the judgment creditors, and having already the legal estate, both together give him the better title. (*Crisp*. v. *Heath*, 7 *Vin. Abr.* 52, e., *pl.* 2. 5 *Bac. Abr.* 45. *Sugden on Vend.* 340.) But if he had notice of the judgments previous to the purchase, then he is not a *bona fide* purchaser, and cannot set up equal equity, and the lien of the judgment creditors will then prevail. About this principle there seems to be no diversity of opinion. Mr *Powell*, however, contends, (p. 616, 618,) that this rule is not applicable to the case of an equitable interest, which might be sold on execution within the statute, as then the purchaser would hold even if he had notice; and hence

arises the question between him and Mr. *Sugden*, the latter contending [251]
that he would not.  It is conceded the interest of the mortgagee, though
a trust estate, does not fall within this statute, and cannot be taken on
execution in England. (3 *Atk.* 738.  2 *id.* 290.  1 *Ves. jun.* 431.  8 *East*,
466.  1 *Caines' Cas. in Error*, 47.)  The grounds upon which Mr. Powell rests
the argument are these : that as the lands thus held in trust are made liable at
law only, where the trustee is seized or possessed of them at the time of the
execution sued out, and as the judgment itself is not a specific lien upon an
equitable interest, if the trust is determined before execution by a conveyance
from a trustee, the lands are not liable at law, and as equity follows the law, they
are not liable in equity.  Therefore, he says, when a purchaser takes an estate
from a *cestuique trust* and his trustee, before execution awarded against the
former, he thereby acquires that which then is not the subject of an execution on
a judgment against him from whom he purchased, at law, and consequently not
in equity, and then notice of the judgment is immaterial, since it ceased to attach
upon the property, if it be not in the seizure or possession of the trustee at the
time when execution was sued out ; that is, whatever may have been the rule
in equity before the statute, inasmuch as that subjected the lands to judgment
and execution *at law*, if they are not thus made liable before the purchase from
the trustee, they will not be made liable in equity, as that follows the law in
this respect : in other words, the legal remedy provided by the statute has
altered the rule in equity.  On the other hand, Mr. *Sugden* insists that the
statute has not concluded this equitable relief ; that inasmuch as a judgment
creditor would be relieved as against a subsequent purchaser from the *cestuique
trust* and trustee *with notice*, before the statute, he is of the opinion that the
same equity would still be administered ; that the partial remedy given at law
should not interfere with the equitable rights of the parties : in other words, that
the partial remedy is cumulative.  He admits his confidence is somewhat
shaken, from the absence of authority upon the point.  Without now under-
taking to express a definite opinion upon this vexed question, I am free [252]
to say, if it were necessary to do so, I should incline to the view of
Mr. *Sugden*, as most conformable to the analogies of the law ; but upon re-
curring to the case under consideration it will be seen, as before said, that the
question does not necessarily arise, because, 1. this trust is not within the 22
*Car.* 2, *ch.* 3, § 10 ; 1 *R. L.* 74, § 4 ; and 2. it is not pretended that Roberts
has got the legal estate from the trustees.  It is true, they have in form made
a conveyance to him, under the decree of the vice chancellor, but that is still
*sub judice*, and constitutes no part of the ground upon which resistance is made
to the judgments.  If he had thus obtained the legal estate in addition to the
equitable interest before acquired under the assignment, then inasmuch as it was
received without actual notice of the judgments, it is perfectly clear, a court of
equity would not relieve against it, if Roberts could be regarded in the light of a
*bona fide* purchaser ; if he was not to be so regarded, as held by the chancellor,
from the circumstance of having paid no money, taking the assignment merely to
secure precedent debts, a different rule would apply.  But until he gets the *legal
estate*, the question of notice does not arise, is not material, according to the views
of either of the two authors above referred to, and also upon abundant authority,
as we shall show hereafter.  This same question is accurately stated by the
recent writer (Mr. Coote) before mentioned.  He observes, ( *p*. 71.,) that if a
mortgagee in fee purchase the *equity of redemption*, he will of course be pro
tected from all judgments subsequently to his mortgage of which he had not
notice.  But he says a difference of opinion has prevailed, whether in equity,
judgments bind a subsequent purchaser, a mortgagee, who had notice of them
but who previously to execution sued out (under the statute of 22 *Car.* 2,) ob-
tained a conveyance from trustees in whom the lands had been vested, before
obtaining execution against the *cestuique trust*.

Lynch *v.* The Utica Insurance Company.

Having thus cleared the case of the difficulties in which it seemed to be involved upon the argument, the real question to be decided will be found to be of very [253] easy solution. On the one side the respondents set up an equitable lien upon the estate of their debtor, Lynch, by virtue of four judgments, from the date of their docketing, 27th February, 1829. On the other, Roberts claims the same estate by virtue of an assignment to him of the date the 25th February, two days earlier, but which confessedly was not then delivered, and did not become operative until after the docketing of the judgments. This instrument is in the nature of a mortgage, though that is not material, for a mortgagee is deemed a purchaser *pro tanto*, and therefore, for the purpose of the view I am about to present, I shall concede that Roberts is a subsequent *bona fide* purchaser, for a valuable consideration without notice; and the case then presents a question simply between a judgment creditor, and a subsequent *bona fide* purchaser, respecting the equitable estate of the debtor, putting it upon the most favorable footing for the appellants. The legal estate is in others, and can be reached only through the respective liens upon or claims to this equitable interest; the party must maintain priority upon that in order to acquire it in respect to the legal title, and that too in a court of equity, which alone has cognizance of these conflicting equitable interests. What then is the rule? It is given in *Berry* v. *The Mutual Ins. Co.*, (2 *Johns. Ch. R.* 603,) as accurately as it can be found anywhere, after referring to the authorities; namely, if there be several equitable interests affecting the same estate, they will, if the equities are otherwise equal, attach upon it according to the periods at which they commenced; for it is a maxim of equity as well as of law that *qui prior est tempore potior est jure*. It is not to be controverted, in this case, that the equities are equal, because the judgment and assignment were given for the like considerations, and are held for the same objects, namely, to secure existing *bona fide* demands against Lynch. But even if Roberts had been a purchaser for a consideration advanced at the time, the equities of the parties would not have been altered; the precedent debt for which the judgments were given, constituting a valuable consideration within [254] all the cases involving the question of priority of lien, or as to which person has shown the better title. We have already said that where each party claims a lien only upon an equitable interest in lands, notice is out of the question. This is the rule at law in respect to the legal estate, in the absence of registering and recording acts. Notice is immaterial. A subsequent *bona fide* mortgagee, or purchaser, *without notice*, of a prior incumbrance or sale, there takes subject to them. The object and effect of these acts were to change the rule of law, and give priority to the junior mortgage or deed, if first put on record. Under them, notice has often become important in respect to the rights of the prior incumbrancer, but for no other purpose than to avoid the effect of the registry upon him, and thereby restore the common law rule of priority according to date. It is this rule at law respecting liens upon the legal estate of a party, that is alike applicable to his equitable interests. Courts of equity, in applying it, have made many exceptions, some of which it may be useful to notice, as they will tend to bring out more distinctly the general rule. The exceptions are grounded upon the principle, that when one incumbrancer is armed with an equity only, and another with an equal equity and also the law, the court will leave the parties to combat at law, and will not take from the junior incumbrancer any advantage which the law may give him. (1 *T. R.* 767, 8. *Salk.* 520. 2 *P. Wms* 491. 2 *Ves.* 486. *Sugden on Vend.* 508, 714, ed. 1828. *Powell on Mortgages*, 477. *Ram on Assets and Incumb.* 396, 7.) But the creditor or purchaser, in order to avail himself of this rule, must become seized or possessed of the legal estate, by which is meant a title that will give him the immediate possession or control of the estate at law, or at least he must have the best right to call for such title. The case we have before stated, of a mortgagee in fee buying in the equity of redemption, and thereby taking it free

Lynch v. The Utica Insurance Company.

from intermediate incumbrances, is a practical illustration of the principle. There, being mortgagee in fee, he had the legal estate, and the contract of purchase gave him an equal equity to the interest of the mortgagor with [255] the intermediate incumbrancer.  So where there are several mortgagees, and the last one buys in the first mortgage that carries with it the fee, he may protect himself against all of the intermediate mortgagees; they will not be permitted to redeem the first, without also the last.  So the first mortgagee in fee may buy in a subsequent mortgage or judgment, and thereby acquire priority in respect to them, over judgments or mortgages intervening.  So also a junior incumbrancer may buy in an outstanding term for years, and thus obtain the legal estate and consequent right to the possession and profits of the land; will be permitted to hold and appropriate the rents and profits, not only to disburse the purchase money, but to pay off his incumbrance over older ones.  So reluctant are courts of equity to interfere between conflicting incumbrancers of equal equity, where a junior one has acquired an advantage by procuring the legal estate, that it will not interpose to prevent the use of an outstanding judgment or mortgage binding the fee though paid, or term for years though satisfied; and there are several cases in the old books where title deeds of such terms were actually stolen, and still permitted to be thus used by the parties.  (1 Vern. 52.; 2 id. 157, 158.  Powell on Mortgages, 516.)  As in Sir John Fagg's case, where he came into a man's study, and there privately put into his pocket an old dormant statute, which would have been a lien upon his purchase.  Another person was allowed to take advantage of a deed which he stole through a window by means of a ladder, and a third who obtained the deed without any consideration, and by trick. (Sugden on Vend. 509, ed. 1828.  2 Vern. 159.)  The mere possession of these deeds was deemed enough to give the advantage over the adverse equity.  Now, though all these cases of exception show, that if a junior incumbrancer or purchaser gets hold of the legal estate, he thereby gains an advantage at law over an older incumbrancer, by means of the possession and consequent profits of the land, which courts of equity will not relieve against, they likewise clearly recog- [256] nize and confirm the general rule, that without this legal advantage, the order of payment or priority of holding, is according to the date of the incumbrances, or purchase.  One more illustration may be given, which is very direct to the point. Where there is a satisfied term of years in a person to whom it has been assigned generally, in trust to attend the inheritance, as a mere muniment of title, and not for any particular mortgage or judgment, the first benefit of, or priority conferrable by it, belongs to that incumbrancer who, in order of time, is the first on the estate, whether mortgagee or judgment creditor. (2 P. Wms. 491, 495.  1 T. R. 773.  3 P. Wms. 328.  Ram on Assets and Incumb. 417.)  In such cases the court applies the maxim, qui prior est tempore potior est jure, unless some other party has a better right to call for the legal estate, that is, to call for an assignment of this term to or in trust for himself, (2 Ves. 486; 10 id. 270; 11 id. 618,) by which he could get the possession and profits of the land.  There are several ways of acquiring this better right; one is, where the trustees of the term joined in the conveyance to the purchaser, but not so as to convey it: this was considered a declaration that they would hold for him; another is where the party has used diligence to possess himself of the deed, which creates the term at the time he took his incumbrance, or where he has endeavored to acquire the legal estate, but failed by reason of a defect in the conveyance.  Nothing of this kind can be set up in this case by Roberts, as he is simply a subsequent purchaser of this equitable interest, without any special right to claim from the trustees the legal title, and without having had any dealings with them.  He cannot pretend that he took the assignment in confidence that they would vest him with the fee; he can claim it only as the judgment creditors claim, by virtue of the right shown to the trust estate.  He stands simply in the place of the assignor, took only the interest of which he was possessed at the time, and can set up no other claim to

the execution of the trust, or the legal title as it respects the judgment creditor, than Lynch, the assignor, could have urged. That would have been sub-[257] ject to the equitable lien of these judgments; and hence there is nothing in the case shown to take it out of the general rule.

I am, therefore, in favor of affirming the decree of the court below.

On the question being put, *Shall this decree be reversed?* all the members of the court, with but one dissenting voice, (23 being present,) voted in the *negative.* Whereupon the decree of the chancellor was AFFIRMED.