(4 Misc. Rep. 570.)

WILE & BRICKNER CO. v. ROCHESTER & K. F. LAND CO.

(Circuit Court, Monroe County. August, 1893.)

1. CORPORATIONS—NOTES PAYABLE TO DIRECTORS—BONA FIDE HOLDERS.

Notes were given by defendant corporation to two of its directors in payment for property purchased from them. The resolution to purchase, and to give the notes, was adopted at a directors' meeting when the vendors were present, and were necessary to constitute a quorum, but they did not vote on the resolution. *Held* that, though the transaction was voidable as between defendant and the vendors, the notes so given were valid in the hands of a bona fide purchaser, who, before taking them, asked defendant's secretary about them, and was informed that they had been authorized by the board of directors.

2. SAME—ACTS OF DE FACTO DIRECTORS.

A director who is permitted to act as such after he has sold all his stock is a director de facto, and the proceedings of the board, in which he takes part, are valid as to third persons.

Action by the Wile & Brickner Company against the Rochester & Kettle Falls Land Company on a promissory note. Judgment for plaintiff.

David Hays, for plaintiff.

C. J. Bissell, for defendant.

RUMSEY, J. There is no dispute at all about the facts of this case. The defendant is a corporation organized under the general act for the formation of manufacturing corporations, for the purpose of dealing in land at Kettle Falls, in the state of Washington. It had 13 directors, who were named as such in the articles of incorporation. Two of these were Messrs. Aris and Morley. In the month of August, 1891, Aris and Morley were the owners of an hotel, and its furniture, at Kettle Falls, which it was proposed the defendant should buy. To that end, at a meeting of the board of trustees of the defendant held August 28, 1891, a motion was made that the company buy the land, and that the secretary make the notes of the company to pay for it. Of the thirteen directors, eight were present at that meeting. Two of them—Messrs. Aris and Morley, the sellers of the land—did not vote. One voted no, and four are recorded as voting yea. But Weaver, the presiding officer, did not vote, although he was present at the opening of the meeting. Pursuant to the direction of the resolution, Aris and Morley having conveyed the property, the notes of the defendant were made for it. One of the notes, for $5,000, was sold by Aris and Morley, who were the payees named in it, to the plaintiff, who delivered to them, for it, clothing. After Aris and Morley had transferred the note to the plaintiff, the defendant sued to set aside the sale of the land, having first tendered a reconveyance of the property, but of this the plaintiff had no notice. The note bears across its face a written statement, as follows: "Authorized by resolution adopted Aug. 28, '91. W. C. Waite, Sec'y." Before seeing the note, the president of the plaintiff inquired of Mr. Waite, the secretary of the defendant, about the note, and was told that the notes had been given for lands sold to the defendant, and they had been authorized by the board

of directors.  On the faith of that statement, he took them.  Huber, one of the persons who acted at the time of the passage of the resolution, and voted for it, had, a short time before then, sold all his stock in the corporation; but he still continued to act as a director, although, by the sale of his stock, his office had been vacated, and he ceased to be, de jure, a director.  Stock Corp. Law, § 20.  Upon this state of facts, the defendant claims that the action of the board of trustees, authorizing the purchase and issue of notes, was void, because part of those necessary to make the quorum of the meeting were the sellers, and the payees of the notes, and because there was in fact no majority of the board present, and because a majority of lawful directors did not vote for the resolution, and therefore it was not actually passed.

There is no doubt that at least seven directors must be present, to constitute a quorum, and that, unless such quorum has met, no corporate action can be taken.  It is quite true, too, that the presence of Aris and Morley and Huber, or two of them, was necessary to a quorum.  It may be admitted, too, that the action taken at that meeting would have been vacated upon the suit of the corporation.  But the action of a trustee of a corporation in making a contract with the corporation is not void.  The corporation may set it aside, returning what it has received upon the contract. But, unless it sees fit to repudiate the transaction, it is valid; and, until repudiated, it is valid as to third parties who acquire rights under it.  Barr v. Railroad Co., 125 N. Y. 263, 26 N. E. Rep. 145; Skinner v. Smith, 134 N. Y. 240, 242, 31 N. E. Rep. 911; Oil Co. v. Marbury, 91 U. S. 587, 589; McGourkey v. Railway Co., 146 U. S. 536, 13 Sup. Ct. Rep. 170.  The cases cited by the counsel for the defendant were actions in which the voidable act was sought to be enforced against the protest of the corporation, or where a suit had been brought to set it aside.  As applied to those cases, the language quoted is apposite and correct.  But all the cases concede that, until the corporation has acted, the transaction, while it may yet be avoided, is valid, at least as to third persons who take action on the faith of it, without notice of any action of the corporation to set it aside.  The participation of Aris and Morley in this meeting, though their presence was necessary to make a quorum, did not invalidate it, although it was a good reason for the corporation to move to vacate the action, if they chose.

So, while Huber, after he had parted with his stock, ceased to be, de jure, a director, yet so long as he was permitted to sit as a trustee, and act as such, he was still an officer de facto, and his acts were. valid, so far as third parties had an interest in them.  Despatch Line v. Bellamy Manuf'g Co., 12 N. H. 205; In re Mohawk & H. R. Co., 19 Wend. 135.  It could not be endured that every man who had occasion to deal with a corporation should be required, at his peril, to examine into the title of those persons who were allowed to sit with the board of trustees, and act as directors.  The minutes show, therefore, that a resolution was passed at a time when seven of the directors were present, and that a majority of the seven voted for it, and that it was declared

carried, and so entered. That it was, Mr. Brickner would have seen, had he examined these minutes. Certainly, if a third party, being about to act upon the authority of a director of a corporation, finds such an entry as that in its records, giving the authority to him, he may rely that, at least, the resolution is effective to warrant the action it directs the officer to take. We have here, then, an act of the trustees directing the issue of these notes by the secretary. The case differs from that of People's Bank v. St. Anthony's Roman Catholic Church, 109 N. Y. 513, 17 N. E. Rep. 408, because in that case it appeared affirmatively that the officers who signed the note acted separately, and not at a meeting of the board, and that there was no corporate act as a basis of their authority so to do. Judge Andrews, at page 523, 109 N. Y., and page 410, 17 N. E. Rep., distinguishes that case from one where the ruling body of the corporation has met, and taken corporate action. The action thus entered upon the book of record of the company had not been repudiated, nor, so far as appears, objected to by any one on its behalf, when Mr. Brickner made his inquiries of the secretary as to the consideration and validity of this note. The secretary had been authorized to make it, and he was the proper person to inquire of concerning it, and Mr. Brickner had the right to rely upon what the secretary told him about it. Fifth Avenue Bank v. Forty-Second St. & G. St. Ferry R. Co., 137 N. Y. 231, 237, 33 N. E. Rep. 378. The secretary was told of the object of these inquiries at the time they were made, and he knew that the plaintiff contemplated buying this note. But, although he knew this, he gave the plaintiff no intimation of the action of the new board looking to a repudiation of the contract, nor of the action brought to set it aside. If either had been brought to its notice, the plaintiff might have refused to take the note, or have rescinded the transaction. Out of these facts the plaintiff could build up a pretty strong case of an equitable estoppel, if its case required it. Of the fact of the repudiation of the contract of the defendant, plaintiff had no notice until the consideration for the purchase of the note had been fully paid.

Upon the whole case, it cannot be doubted that the plaintiff was a holder of this note, in good faith, for value, before it matured. That there may be such a holder, where the paper has been issued after an apparent authority to make it has been created, cannot be denied. Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125, 129. That is so even as to town bonds, where there was original authority to issue the bonds. Town of Solon v. Williamsburgh Sav. Bank, 114 N. Y. 122, 21 N. E. Rep. 168. The case is very like that of Wilson v. Railroad Co., 120 N. Y. 145, 24 N. E. Rep. 384. In that case the directors of the defendant had authorized the making of notes for an illegal purpose, and which would have been canceled, had they not been negotiated. Railroad Co. v. Kneeland, 120 N. Y. 134, 24 N. E. Rep. 381. The plaintiff, Wilson, having bought one of the notes in good faith, sued on it; and, although the issue was, as to the corpo-

ration, fraudulent, yet, as there was apparent authority to issue it, he was allowed to recover, upon showing that he paid value before maturity, without notice of the facts making the note illegal. That case is no stronger for the plaintiff, on its facts, than is the one at bar, and it is full of authority for a recovery in this action. I can see no escape from the conclusion that the plaintiff is entitled to recover.