## SUPREME COURT.

### WILLIAM P. VAN RENSSELAER vs. ABRAM WHITBECK and NICHOLAS SHARP.

In an action of trespass against a tax collector and supervisor for taking property of plaintiff, by the collector, to satisfy the amount of tax directed to be collected; and verdict for defendants. It was insisted by the plaintiff on motion for a new trial, that the assessment roll was illegal and void, and therefore the warrant conferred no authority on the collector. 1st. Because the plaintiff was a non-resident of the town, which was well known to the assessors. 2. Because the assessment of the plaintiff's land in the assessment roll was designated in a separate list, between the resident and non-resident lists, and was not sufficiently described, and therefore not in conformity to the statute in relation to assessment of non-resident lands. 3d. Because the assessors disregarded the affidavit (see the copy in the case) made by plaintiff for the purpose of reducing the assessment of his ground rents; and 4th. Because the certificate of the assessors, attached to the assessment roll, was not, either in form or substance, such a certificate as the statute required. (See copy in the case.)

*Held*, that the essential thing to be done by assessors is to determine who are to be taxed and what property is taxable. This is a matter within their jurisdiction. In making the determination they act judicially, and though they may proceed irregularly, yet, having jurisdiction of the subject matter, their unreversed decisions cannot be questioned collaterally. (See 6 Hill, 646.)

Also *held*, that the power of review of assessment rolls, vested in boards of supervisors, is limited. They can only change and equalize the valuation, and make any alteration in the description of the lands of non-residents; any other errors of the assessors they cannot notice.

As to the particular objections of plaintiff, *held*, 1st, that the entire want of a *certificate*, much less the omission of the assessors to adopt the form prescribed in the statute could not invalidate a tax charged by the board of supervisors upon the persons and property specified in the assessment roll, if the assessment roll itself were in all respects conformable to law. It was but the evidence of what the assessors had done.

2d. The plaintiff's lands were *designated* in the assessment roll, "in a part thereof separate from the other assessments," and this was all the statute required in that respect, and the *description* therein given was sufficient for a non-resident. But, *conclusively*, a failure to comply with either of these directions of the statute, would be but an irregularity in a mere matter of form, in no way affecting the rights of anybody, and therefore would not vitiate the assessment. (See 21 Pick 64; 1 Hill, 130.)

3d. That the plaintiff by his *affidavit* to reduce the amount of the tax (provided it was clear that in the assessment of ground rents, it applied as in other cases of personal property, under the statute,) had not brought himself in any respect within the requirements of the statute. It was not entirely clear what it was intended the affidavit should express. The assessors were clearly right in disregarding it. *Motion for new trial denied.*

*Argued Albany General Term September* 1849, *and decided Albany May General Term,* 1850.—*Before Justices* PARKER, HARRIS, WATSON and WRIGHT. This was an action of trespass for taking and disposing

of personal property.   It was tried at the Rensselaer circuit, February, 1849, before Mr. Justice HARRIS.   It appeared upon the trial that the defendant, Sharp, was collector of the town of Greenbush, and had taken the property in question to satisfy a tax against the plaintiff.   The defendant Witbeck, was supervisor of the same town, and, a ssuch supervisor, had signed the collector's warrant.   The defendants, to justify the taking, gave in evidence the assessment roll of the town of Greenbush, for the year 1847, and the warrant, issued by the board of supervisors of the county, to the collector of Greenbush, for the collection of taxes mentioned in the roll.   To the warrant was annexed a copy of the assessment roll.   By the terms of the warrant the collector was required to collect "from the several persons named in the assessment roll, annexed thereto, the several sums mentioned in the last column in each page thereof, opposite their respective names."   The assessment roll contains first, the names of the taxable inhabitants residing in the town, arranged in alphabetical order, giving in columns opposite such persons' names the quantity and value of their real estate, the total amount of their real and personal estate, and the amount of tax assessed.   In another part of the roll is inserted the assessment of the lands of non-residents, stating their names in alphabetical order, and giving in columns opposite each person's name, the quantity and value of his real estate, the total amount of his real estate, and the amount of tax assessed.   Between these two classes of assessments are those against the plaintiff.   They are as follows:

Van Rensselaer, W. P., or occupant of Mansion House, 608 acres, value

|  |  | value | | tax | |
|---|---|---|---|---|---|
| | | $17,000, | tax, | | $73.10 |
| Farm, McAuley, occupant, 208 acres, value | | 4,000, | " | | 17.20 |
| House and office, | | 2,000, | " | | 8.60 |
| Storehouse, | | 150, | " | | 66 |
| House and lot, Dearstyne, occupant, | | 150, | " | | 66 |
| Dock, | | 500, | " | | 2.15 |
| | | $23,800, | | | $102.37 |

Amount of rents reserved in leases chargeable upon lands within the town of Greenbush, assessed according to an act passed May 13, 1846:

| Van Rensselaer, W. P., bushels wheat, | 1928,10 lbs. | 20,657 |
|---|---|---|
| Services and wood, | 149,50 | 2,136 |
| Fowls, | 33,60 | 480 |
| Cash, | 217,50 | 2,300 |
| | | 25,571 |

Opposite which is carried out the tax assessed, amounting to $109.96.

Annexed to the assessment roll is a certificate signed by the assessors, as follows:

" We do severally certify that we have set down in the foregoing assessment roll, all the real estate situated in the town of Greenbush, according to our best information, and that we have estimated the value of the said real estate at the sums which a majority of the assessors have decided *to be proper*, and that the assessment roll contains a true statement of the aggregate amount of the taxable personal estate of each and every person named in said roll, over and above the amount of debts due from such persons respectively, and excluding such stock as is otherwise taxable, *according to the usual way* of assessing. Greenbush, August 30th, 1847.

MARTIN DE FREEST,
BENJANIN G. DENNISON,
GEORGE C. BARRINGER,
*Assessors.*"

The plaintiff proved that in the fall of 1846, he removed from Greenbush, where he had previously resided, to the city of New York, and had not since been a resident of Greenbush; that in August, 1847, his agent had appeared before the assessors, and stated to them in the presence and hearing of the defendant Witbeck, that the plaintiff was not a resident of Greenbush, and presented to the assessors an affidavit in the words following:

" Rensselaer county, ss.: William P. Van Rensselaer, of the city and county of New York, being duly sworn, says that the value of the annual rents, owned by him, liable to taxation, in the town of Greenbush in said county, by the act intituled " an act to equalize taxation," passed the 13th day of May, 1846, will not exceed the sum of eleven thousand two hundred and eighty-eight dollars, after there shall be deducted from the same the just and true proportion of all his just debts that will remain unpaid, after all the personal property owned by him, except that invested in the stock of incorporated companies, liable to taxation under the 12th chapter of the first part of the Revised Statutes, shall be applied to the payment of all his just debts; said proportion so deducted, being the amount of said debts, which, if all his debts, except those to be paid, as before mentioned, by his personal property, were deducted from all his rents, would by such deductions be taken from the whole amount of his rents in said town.

WM. P. VAN RENSSELAER.

Sworn before me this 14th day of August, 1847.

MARTIN DE FREEST.

The counsel for the plaintiff insisted that the assessment roll was illegal and void, and, therefore, that the warrant conferred no authority on the collector to take the plaintiff's property.

The grounds upon which it was insisted that the assessment roll was illegal and void, were : 1st, because the plaintiff was a non-resident of the town, which fact was known to the assessors and the defendants; and 2d, that the assessment of the plaintiff's lands, in the manner specified in the assessment roll, was void as an assessment of lands of a non-resident, because it was not made in conformity to the provisions and directions of the statute, respecting the assessment of non-resident lands.    3d.  That the assessment of the plaintiff for ground rents, chargeable on lands in Greenbush, was illegal and void, because the assessors disregarded the affidavit made by the plaintiff and presented to the assessors, and refused to reduce the amount, at which said ground rents were assessed by them, in conformity with the affidavit ; and 4th, that the certificate of the assessors attached to the assessment roll was not either in form or substance, such a certificate as is required by the 26th section of title 2, chapter 13 of the first part of the Revised Statutes, and was illegal and void on its face, and the warrant was no justification to the defendants for want of such a certificate as is required by the statute.

The judge decided that the warrant and assessment roll, and assessors certificate, in connexion with the evidence, were sufficient to protect the defendant from liability to the plaintiff in this action, and that the plaintiff was not entitled to recover, and therefore, directed a non-suit to be entered.    The plaintiff's counsel excepted to the decision and direction, and moved for a new trial upon a bill of exceptions.

    D. BUEL, Jr., *for plaintiff.*
    D. L. SEYMOUR, *for defendants.*

By the Court, HARRIS, Justice.—The first duty of assessors is, by diligent inquiry to ascertain who are the taxable inhabitants, and what is the taxable property, within their respective towns or wards.    Having done this they are next to proceed to make, in a prescribed manner, an assessment roll.    It is to contain four separate columns, in the *first* of which is to be inserted the names of all the taxable inhabitants ; in the *second*, the *quantity* of land taxable to each inhabitant; in the *third*, the *full value* of such land, and in the *fourth* the full value of all the taxable personal property.    In another part of the same assessment roll, separate from the other assessments, they are to designate, in a particular manner, the lands of non-residents.    The first direction is, that the land to be as-

sessed shall be designated by its name, if it be known by one. The rule of valuation is also prescribed. When the assessment-roll is completed, it is to be submitted to the examination of the inhabitants of the town or ward for twenty days, at the expiration of which time the assessors are required to meet to review the assessment upon the application of any person conceiving himself aggrieved. The assessors are then to sign the roll and attach thereto a certificate, the form of which is pre-scribed, and to deliver the roll, thus certified, to the supervisor. The essential thing to be done by the assessors is to determine who are to be taxed and what property is taxable. This is a matter within their juris-diction. In making the determination they act judicially, and though they may proceed irregularly, yet, having jurisdiction of the subject-matter, their unreversed decisions cannot be questioned collaterally. If, for example, some other rule of valuation than that prescribed by the statute should be adopted, or if the assessors should refuse to value the estate of any person liable to taxation, at the sum specified in the affidavit of such person, it might, perhaps, furnish ground for reversing the pro-ceedings, but it would not be ground for holding the assessment void upon a collateral question. (*Marchant* v. *Langworthy*, 6 Hill, 646.)

There are other provisions of the statute prescribing the duties of as-sessors which are obviously directory in their character. Of this descrip-tion is the requirement in the 8th section that the assessors shall ascertain between the first days of May and July, who, and what property is tax-able, and the 19th section requiring the assessors to complete their rolls on or before the first day of September; and the 27th section which requires the certified roll to be delivered to the supervisor of the town on or before the first day of October. These duties, though required, are not " of the essence of the thing to be done," and therefore are not essential to the validity of the assessment. So too, I think, the certifi-cate required by the 26th section of the statute is to be regarded. If the assessors have performed their duty in making the assessment-roll, as they may be presumed to have done, the certificate amounts to nothing more than a solemn declaration on their part, that they have performed such duty. It forms no part of their adjudication, upon which the action of the board of supervisors is to be taken. It is but the evidence of what the assessors have done, and therefore it seems to me would not, even in a direct proceeding, bringing in question the validity of the assessment, be the subject of review. At any rate the entire want of such certificate, much less the omission of the assessors to adopt the form prescribed in the statute, could not invalidate a tax

charged by the board of supervisors upon the persons and property specified in the assessment roll if the assessment itself were in all respects conformable to law.

The board of supervisors are required to examine the assessment rolls returned to them, for the single purpose of ascertaining whether the valuations of real estate in one town or ward, bear a just relation to those in the other towns or wards in the county, and if they do not, the board is authorized to change such valuation so as to produce such relation. It is also authorized to make any alteration in the description of the lands of non-residents, necessary to make such descriptions conformable to law. To these objects, the power of review, vested in the board of supervisors, is limited; any other errors committed by the assessors in the discharge of their duty, it is not within the province of the board of supervisors to notice. The assessment-rolls being returned to them, containing the names of the persons to be taxed, and the taxable property, and the assessors' valuation of such property, it is the duty of the supervisors, after having examined and corrected the valuations and the descriptions of the lands of non-residents, to proceed to annex the tax list. No mere irregularity in the proceedings of the assessors would justify the supervisors in omitting the discharge of this duty. That the assessors in this case were guilty of a gross departure from a duty plainly defined by the statute, is obvious; and yet it is a matter within the knowledge of every one at all acquainted with the manner in which the duty of assessors is discharged, that the certificate which the assessors, in this instance, annexed to the assessment-roll, prepared by them, was the only certificate, which, as men of truth, they could subscribe. The law requires assessors to estimate all property, liable to taxation, at its full value, as they would appraise the same in the payment of a just debt due from a solvent debtor. With this requirement of the statute before them, and acting under the obligation of their official oath, it is the uniform practice of assessors to estimate all real estate at a valuation greatly below its real value. There probably is not to be found a single instance in the state in which assessors have estimated the value of real estate according to the standard prescribed by the statute. The whole assessed value of the real estate, liable to taxation throughout the state, is probably less than half its real value. The real difference between the certificate before us, and that usually annexed to assessment rolls, is, that in this case, the assessors have, in fact, stated the truth, while others, in following the form prescribed by the statute, have certified to what they must have known to be untrue.

It is also insisted that the assessment of the plaintiff's lands in Green-

bush was illegal and void, because they were assessed as the lands of a resident of the town, and not in conformity with the provisions of the statute relating to the assessment of the lands of non-residents. I am unable to perceive that this objection is founded in fact. It appears that the lands of the plaintiff are entered in the assessment-roll by them selves, upon a page standing between the assessment of the taxable inhabitants of the town, and the assessment of the lands of non-residents. The plaintiff's lands are designated in the assessment-roll, " in a part thereof separate from the other assessments," and this is all that the statute requires in this respect. I think, too, there is a substantial compliance with the statute in relation to description; as I understand the direction of the statute, it is enough, where the land of a non-resident is known by a name, to enter it in the assessment-roll by such name, and then to set down in two other columns the quantity and valuation of the land assessed. This was done in respect to each parcel of the plaintiff's land. But a conclusive answer to the objection is, that these directions are given with a view to the convenience of the officers engaged in the collection of taxes, and with reference to the probability that a sale of the lands may be necessary. To the owner it is a matter of indifference whether his lands are assessed as the lands of a resident or a non-resident, or whether they are described in the particular manner specified or not. His rights are not affected by the observance or the non-observance of these regulations of the statute. In either case, the amount of the tax with which he is chargeable is the same ; a failure to comply with either of these directions of the statute would be but an irregularity in a mere matter of form, in no way affecting the rights of anybody, and therefore would not vitiate the assessment.

The distinction between such irregularities as affect the validity of an assessment and those which do not, is considered in the case of *Torrey* v. *Milbury*, (21 Pick. 64.) That was an action by a tax payer to recover back money paid upon a warrant of distress for a tax, upon the ground that the tax was illegally and irregularly assessed. The statute of Massachusetts requires the assessors, in making out their list, to set down in distinct columns " *the true value of real estate*," and " *the reduced value of real estate.*" In the case before the court, the assessors had omitted to comply with the requirement, and had inserted in their list but one column, which was headed " value." The question was, whether this irregularity rendered the assessment void, so that each person taxed might take advantage of it and recover back the money he had paid. It was held that a compliance with the requirement of the statute in re-

spect to distinct columns for the true and reduced value of the lands assessed, was not a condition precedent to the validity of the tax, but was to be regarded as merely directory. SHAW, Ch. J. in delivering the opinion of the court, says, "in considering the various statutes regulating the assessment of taxes, and the measures preliminary thereto, it is not always easy to distinguish which are conditions precedent to the legality and validity of the tax, and which are directory merely, and do not constitute conditions. One rule is plain and very well settled, that all those measures, which are intended for the security of the citizen, for securing an equality of taxation, and to enable every one to know, with reasonable certainty, for what polls, and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent, and if they are not observed he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax. But many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which does, in no respect, affect the rights of tax-paying citizens. These may be considered directory; officers may be liable to legal animadversion, perhaps to punishment, for not observing them. But yet their observance is not a condition precedent to the validity of the tax."

In *Bloom* v. *Burdick*, (1 Hill, 130,) the same distinction is well stated; a surrogate had granted administration upon an estate without taking a proper bond; the statute required that officer, upon granting administration, to take sufficient bonds, &c. and with *two or more* competent sureties; he had taken a bond with but one surety. BRONSON, J.: "the duty of the surrogate is plain; but the omission to take *two or more sureties* is not a matter which goes to the foundation of the proceeding so as to render the letters of administration void; only two things were essential to the jurisdiction of the surrogate in granting the administration, to-wit, the death of the intestate, and the fact that at or immediately previous to his death, he was an inhabitant of the same county with the surrogate. If those facts existed, the surrogate had authority to act, and the omission to take a proper bond was an error to be corrected on appeal, and not a defect of jurisdiction which would render the whole proceeding void. (See also *Weaver* v. *Devendorf*, 3 Denio, 117; *Williams* v. *Holden*, 4 Wend. 223; *Van Rensselaer* v. *Cottrell*, *ante*, page 376.)

The only other ground upon which it is contended that the assessment is illegal is, that the assessors disregarded the plaintiff's affidavit and

refused to reduce the amount at which his ground rents were assessed. By the 15th section of the statute relating to the assessment of taxes, it is provided that any person whose personal estate is liable to taxation, may make an affidavit that the value of his personal estate, after deducting his just debts, &c., does not exceed a certain sum, and in such case it is made the duty of the assessors to value such personal estate at the sum specified. Whether this provision can be made applicable to the assessment of rents, under the act of 1846, I do not propose now to consider. If it be assumed that it is thus applicable, the slightest reference to the plaintiff's affidavit will be sufficient to show that he has in no respect brought himself within that provision, so as to require the assessors to reduce the amount of his assessment. It is not entirely clear what it was intended the affidavit should express; but if I have been able to understand its import, it is, that after applying all the personal estate of the plaintiff, except his rents, to the payment of his debts, a large amount would remain unpaid; and if his rents in Greenbush should be charged with the same proportion of such unpaid balance of debts, as his rents in other towns, it would reduce the value of such rents to the amount specified in the affidavit. It cannot be necessary to do more than refer to the complicated terms of the affidavit to make it apparent that it is in no respect conformable to the provisions of the section of the statute under which it is sought to give it effect. The assessors were, therefore, clearly right in disregarding it.

Having come to the conclusion that none of the objections to the validity of the assessment roll are well founded, it becomes unnecessary to consider the other questions discussed upon the argument. The assessment being valid, the supervisors were bound to issue their warrant to the collector, and for what he has done, that warrant was a full justification. The nonsuit was therefore properly granted, and the motion for a new trial must be denied.