Treat, C. J. It was made the duty of the Canal Commissioners, by an act passed on the 2d of March, 1887, to “construct a navigable feeder from the best practicable point on Fox River, to the Illinois and Michigan Canal, at the town of Ottawa.” Acts of 1837, p. 41, §8. By the 8th section of that act, and the 16 th section of the “Act to amend the several laws in relation to the Illinois and Michigan Canal,” approved, February 26th, 1839, it was made the duty of the Judge of the Circuit Court of each county, through which the canal passed, to appoint a board of assessors, for the appraisement of all damages, which might arise from the construction of the canal. The assessors were required to make a written report in each case to the Circuit Court, and, if the report was approved by the Court, an order was to be entered directing the commissioners to pay the damages awarded. The 4th section of the “ Act to amend the several laws in relation to the Dlinois and Michigan Canal,” approved, February 1st, 1840, declares: “It shall be the duty of the commissioners, when any person or persons claim damages that they may have sustained, by the construction of the Illinois and Michigan Canal, to settle with any such person or persons, for the damages they may have received, and pay the same: Provided, if the commissioners are of the opinion the claim is too high, and the claimant will not take a fair compensation, they shall call the appraisers as required in the act to which this is an amendment, and they shall proceed as required in said act.” By the provisions of the “Act to provide for the completion of the Illinois and Michigan Canal, and for the payment of the Canal debt,” approved, February 21st, 1843, the canal and the unsold lands and lots belonging to the canal, were granted to the “Board of Trustees of the Illinois and Michigan Canal,” as security for the payment of the loan authorized by that act. Two of the trustees were to be appointed by the subscribers to the loan, and the other by. the state. The trustees were to possess all the powers, and perform all the duties imposed on the canal commissioners by previous laws. Trustees were appointed, to whom the canal property was conveyed. The 10th section of that act, after exempting from the operation of the grant to the trustees, the lands and lots previously sold by the canal commissioners, provides, that the state trustee “is hereby authorized and required to settle all accounts due to contractors and others (except for such damages as are hereinafter provided for) by issuing certificates of indebtedness, which, together with the certificates of indebtedness, scrip, and acceptances heretofore issued by the canal commissioners, shall be received by said trustee, or other officer or officers, in payment for said lots and lands, whenever they may be presented for that purpose.” The exception, referred to in this section, embraced the prospective damages of contratas. The “Act to authorize the bringing of suits against the state trustee of the Illinois and Michigan Canal,” approved, February 28th, 1847, provides, that in cases where individuals or corporations had a right, under the former laws of this state, or any of them, relating to the Illinois and Michigan Canal, to prosecute suits against the board of commissioners of said canal, while said board was in existence, such individuals or corporations shall hereafter have the right to prosecute suits in all competent courts of this state, against the “State trustee of the Illinois and Michigan Canal, by that name and style,” and “judgments obtained against said trustee shall be of the same nature and have the same effect as judgments heretofore rendered against s'aid board of commissioners.” The 1st and 2d sections of the “Act to limit the time to bring claims against the State of Illinois,” approved, March 1st, 1847, are as follows: “Sec. 1. That all persons having unliquidated claims against the state of Illinois, from any cause whatever, shall make out all the vouchers, and present the claim, together with his own affidavit of the correctness of the same, previous to the first" day of January, eighteen hundred and forty-nine, and have the same filed in the office of the Secretary of State, so that future legislatures may know what unliquidated claims do exist against the state, and the grounds upon which they are founded.” “Sec. 2. The unliquidated claims arising from the canal, shall all be proved up by witnesses, before the state trustee on said canal, which shall embrace all the testimony relating to said unliquidated claims, and no further testimony shall be allowed to be brought in to substantiate said unliquidated claims, after they are once filed as above.” By the 3d section, all unliquidated claims growing out of the internal improvement system and other causes, are required to be proved before the Auditor of Public Accounts, and filed with the Secretary of State. By the 4th section, all unliquidated claims against the state, that are not so proved and filed, before the 1st of January, 1849, are barred. The 5th section provides, that “the person hereby empowered to hear testimony, shall certify all proceedings had before him, under his hand.” In May, 1837, Henry L. Brush became seized in fee simple of one undivided half of the east half of the south-east quarter of section 2, in township 33 north, range 3 east, in Lasalle county, containing eighty acres. The Fox River feeder, which was constructed in 1838, passes across this tract of land. In December, 1848, Brush presented his claim for damages to ithe state trustee, when the following proceedings were had: “ Application of Henry L. Bush for damages done by the Fox River feeder of the Illinois and Michigan Canal, to the undivided half of the east half of the south-east quarter of section two, (2,) town thirty-three, (33,) north, range three, (3,) east, 3d P. M. The said Brush exhibited to me sacisfactory evidence of his title to said tract, being the certificate of the Register of the land office, of the entry of said tract by John Bascom, and the deed of said Bascom to him. Henry L. Brush sworn, says, that the Fox River feeder of the Illinois and Michigan Canal runs diagonally across the said tract of land; that about thirty acres of the eighty lies on the north side of the feeder, and the balance, about fifty acre's, on the south side; that the land where the feeder crosses said tract is underlaid with a strata of coal, from eighteen inches to two feet in thickness; that witness has been informed, and has no doubt of the truth of the information, that the coal found in the prism of the feeder was taken out, by or under the direction of the agents of the State, and sold for the benefit of the canal fund; that the coal upon an acre of said tract, will not vary or fall short of a hundred thousand bushels; that the coal in the ground is worth, at least, the sum of a cent and a half per bushel; that much of the coal has been sold by this affiant, for two cents per bushel in the ground; that the coal so sold lay on the north side of the feeder, and the mining of it was and is rendered more difficult, in consequence of the construction of the feeder, by reason of the water being dammed up in the land, and continually leaking through the ground from the feeder; that about two and one-half acres of the coal has been either actually used by the feeder and its banks, or rendered useless or valueless, by reason of earth taken from the prism of the feeder, having been piled up on both sides of said feeder; that the said undivided half of said eighty is also injured by the construction of said feeder, by reason of its separating said tract into two parts, rendering the north part of comparatively little value, and by reason also of the large quantity of surplus earth placed along its banks; that the feeder, not being navigable, is of no benefit whatever to the land; that the feeder aside from the coal is of, at least, one thousand dollars damage to the said forty acres, making an aggregate damage to said part of land of, at least, four thousand seven hundred and fifty dollars. Hestet L. Beush.” Subscribed and sworn to before me, this 20th day of December, A. D. 1848. Charles Oakley, State Trustee. “ John V. A. Hoes sworn, says, that the statements and facts set forth in the above affidavit of Henry L. Brush, are true, to the best of his knowledge, information and belief. John V. A. Hoes.” Subscribed and sworn to before me, this 20th day of December, A. D. 1848. Charles Oakley, State Trustee. “ State of Illinois, ) q , La Salle County, f I, Charles Oakley, State Trustee of the Illinois and Michigan Canal, do hereby certify that on the 20th day of December, 1848, the above named Henry L. Brush, claimant, appeared before me and adduced his title papers, and satisfactory evidence that he was and is the owner of the said tract of land, and also satisfactory proof that the said land had been injured, by the construction of said feeder, in the sum of four thousand and seven hundred and fifty dollars. Charles Oakley, State Trustee. These proceedings were filed in the office of the Secretary of State, before the 1st of January, 1849. During the June term, 1850, Brush presented a petition to this Court, setting forth the foregoing facts, and alleging that his claim for damages was settled and adjusted by the former State Trustee, under and by virtue of the 10th section of the act of February 21, 1843 ; that said trustee promised to issue a certificate of indebtedness for the amount of the claim, but died without doing it; that the present State Trustee refuses to recognize the settlement, and petitioner therefore prays that he may be compelled by mandamus, to issue a certificate of indebtedness. He also makes the following affidavit a part of his petition. “ John V. A. Hoes sworn, says, that he was present at the taking of the proof and settlement of the claim of the relator, by the said Charles Oakley, on the 20th day of December, A. D. 1848, referred to in the petition herein; that George H. Norris, surveyor of La Salle county, Joseph H. Wagoner, deputy surveyor, William Reddick, and this affiant were produced as witnesses by the relator, in support of his said claim; that the said affidavit of the said relator filed herein, does not embody all of the testimony adduced by the relator, in support of his said claim; that the material facts set forth in the said affidavit of the said relator, in support of his said claim, were proven by one or all of the said witnesses above named; that .the affidavit of the relator was not intended to embrace the proof submitted, but only a statement of the claim, and the grounds upon which it was based, to be filed in the office of the Secretary of State, to avoid the running of the statute of limitations of March 1, 1847, against him; that the relator regarded his claim as settled and liquidated by said Oakley, by his said certificate, and by his said verbal promise to pay the amount on his return from Springfield, made in the hearing of this affiant, at the time of signing said certificate. Jons Y. A. Hoes.” Subscribed and sworn to before me. Philo Lindley, CVh La Salle Oir. Court. An alternative mandamus was issued and served on the State Trustee, who appeared and entered a motion to quash the same. Without undertaking at this time to determine the question, whether the act of the 1st of March, 1847, did, by necessary implication, take away the authority of the State Trustee, to settle claims for damages growing out of the construction of the canal, and issue certificates of indebtedness in payment therefor— and we should, as at present advised, be strongly inclined to hold the affirmative, if the result of this case was to depend on the decision of that question—we are well satisfied, upon the case made by the relator, that there has been no adjustment of his claim that is binding on the State, or the present State Trustee. It seems very clear to us, that the former State Trustee, in entertaining the application of the relator, and in hearing the proof adduced by him, was acting solely under the provisions of the act of March 1st, 1847; and not by virtue of any authority conferred by the 10th section of the act of Eebruary 21st, 1843, to settle claims of this character, and issue certificates of indebtedness in liquidation thereof. We entertain no doubt, but that he heard the proof under the 2nd section of the act of March 1st, 1847, and certified the same under the 5th section, for the information and action of the Legislature. There is nothing on the face of the proceedings, or in the acts of the parties, to indicate that the certificate in question was regarded as a final settlement of the claim, which was to conclude the State, or the Trustee. If the Trustee intended to adjust the claim, why was not the certificate of indebtedness then issued, and a receipt taken from the relator for the amount? If a settlement was designed, and anything interfered to prevent its consummation at the time, it may fairly be inferred, that the intention would have been manifested, by some unequivocal declaration to that effect in the certificate delivered to the relator. If the relator understood it to be a final adjustment of Ms claim, for the satisfaction of which he was entiled to receive from the Trustee a certificate of indebtedness, why did he forward the proceedings to the Secretary of State? In such case, the filing of the papers with that officer was wholly unnecessary, and not required by any existing law. Indeed, his office was not the proper depository for them. They properly belonged to the office of the state trustee, and should have been placed on the files of that office. The limitation contained in the act of March 1st, 1847, did not apply to claims of this character, unless that act, by necessary implication, repealed so much of the 10th section of the act of February 21st, 1843, as conferred power on the state trustee to make settlements. The certificate annexed to the proof is but a statement of the trustee, that the relator exhibited satisfactory evidence that he was the owner of the land, and as such had sustained damages to a certain amount by the construction of the feeder. It contains no intimation that he had settled the claim, and agreed to issue a certificate of indebtedness in discharge thereof. The fact that he admitted the proof to be satisfactory, does not, of itself, show that he was adjusting the claim. It can only be considered as an expression of opinion by the trustee, that the relator was entitled to receive from the state a certain amount in the way of damages; and not ns an undertaking on his part to pay the same. There is, in •addition, very strong evidence on the face of the proceedings, that the trustee did not consider himself as concluding the state by his action in the matter. While the relator in his application only claimed to be the owner of an undivided half of the land, the .estimate of damages covers the entire injury to the whole tract. We cannot avoid the conclusion, that the claim would hwe been more closely scrutinized, and the certificate more guarded, and pointed in its terms, if the trustee had regarded his action as obligatory on the state. And yet, it is seriously insisted by the relator, that he is entitled, by force of this certificate, to recover from the canal fund, on account of damages sustained by him as the owner of a moiety of the land, the sum of $4,750, when, in point of fact, and upon his own showing, under oath, before the former trustee, that amount embraced the aggregate of damages to the whole tract. The evidence fails altogether to convince us, that there -was any adjustment of the relator’s claim, that can be enforced against the present trustee. On the other hand, we cannot look upon the action of the former trustee in any other light, than as a hearing of the proof produced by the relator in support of his claim, and a certifying of the same for the consideration of the legislature. But, if a settlement was ever designed, the case fails to show that it was so far perfected, as to be binding on the state, or the trustee. The statute prescribed a particular mode, in which a settlement was to be made. It was to be done, “by issuing certificates of indebtedness” to the claimant. The issuing of a certificate of indebtedness was a necessary part of a valid settlement. Without it, a settlement would be essentially incomplete and imperfect. No rights could vest in the claimant, until the settlement was consummated by the delivery of the certificate of indebtedness. Up to that time, the negotiation would be open and unconcluded, and it would be in the power of the trustee to break it off entirely, and refuse to proceed further in the matter. In the opinion of the Court, the present state trustee was acting strictly in the line of his official duty, in declining to regard the action of his predecessor as a settlement of the claim, and issue a certificate of indebtedness to the relator. The latter must seek relief at the hands of the legislature. The motion of the defendant will be sustained, and the pro ceeding dismissed, with costs against the relator. Petition denied.