## Case No. 11,463.

### PULLAN v. KINSINGER.

[2 Abb. (U. S.) 94; 9 Am. Law Reg. (N. S.) 557; 11 Int. Rev. Rec. 197; 5 Am. Law Rev. 184.] [1]

Circuit Court, S. D. Ohio. 1870.

COLLECTION OF TAXES—INJUNCTION.

1. Section 19 of the internal revenue act of July 13, 1866 (14 Stat. 152), as amended March 2, 1867 (14 Stat. 475),—which provides that no suit to restrain the assessment or collection of any tax authorized, shall be maintained in any court,—applies to all cases where the officer has power to inquire and determine whether the thing assessed by him is liable to taxation, however erroneous his decision of that question may be.

[Cited in brief in Brice v. Elliott, Case No. 1,854. Cited in Delaware R. Co. v. Prettyman, Id. 3,767; Kissinger v. Bean, Id. 7,853; Kensett v. Stivers, 10 Fed. 523; Snyder v. Marks, 109 U. S. 193, 3 Sup. Ct. 160.]

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission. 5 Am. Law Rev. 184, contains only a partial report.]

2. The statute is not unconstitutional; either as depriving the party of his property without due process of law, or as refusing trial by jury.

Bill in equity for an injunction. This action was commenced by Richard B. Pullan and others against Christian Kinsinger and others, to obtain an injunction restraining the defendants from proceeding with the collection of a tax, which, as internal revenue officers of the United States, they claimed to collect from the defendants, as distillers. The tax in question was claimed under section 20 of the act of July 20, 1868 (15 Stat. 133). The action was commenced in the superior court of Cincinnati, by which a restraining order was granted. The defendants then procured the removal of the cause to this court, and now demurred to the bill.

Warner M. Bateman, Dist. Atty., and Mr. Stanberry, in support of demurrer.

H. L. Burnett and Stanley Matthews, in opposition.

EMMONS, Circuit Judge. The complainants, as they were required to do by section 6 of the act of July 20, 1868 (15 Stat. 126), gave notice that they would ferment seventy-two hours, and aver they actually employed all that time, but that the surveyors, in estimating the capacity of the distillery for purposes of taxation, unlawfully disregarded the period fixed in the notice, and assumed one of forty-eight hours only; that this resulted in their determining upon a false capacity, and provided for the assessor a fictitious basis of taxation. They aver that taxes have been paid in full upon all their actual production and all which can be produced while the period of seventy-two hours is employed. They claim, therefore, that the assessor, by taxing a theoretical production which they never have produced, has exceeded his jurisdiction, and the assessment being void, they are entitled to an injunction, notwithstanding the statute prohibiting its issue; that the inhibition does not apply when the proceedings are void.

The government claims the period mentioned in the notice is not obligatory upon the surveyors, but that it is their duty to fix upon the most profitable period of fermentation in order to ascertain the "true producing capacity" of the distillery, as directed by the statute; that when it is thus judicially ascertained and certified to the assessor, he must, as has been done, impose a tax of eighty per cent. of what might be produced had the distillery been run to its full capacity as declared by the survey. It further claims that the statute prohibiting an injunction applies; that both the surveyors and assessor had jurisdiction of the subject, and their proceedings are not nullities, although irregular and illegal.

In the circumstances of this contest it would be beneficial could the court express

an opinion upon the construction of the statute, accompanied by such reasons as would render it influential. But the wide differences at the argument in relation to facts material to its right interpretation render this impossible. The demurrers, therefore, will be sustained upon the ground solely that neither this court nor the state tribunal from which these causes were removed, have any right to restrain the collection of a federal tax assessed by an officer having jurisdiction of the subject, be it never so irregular or erroneous.

This condition of opinion, formed from full recent investigations of this subject in reference to a different tax, when at the bar, was at the opening of the cause announced to counsel. The argument, of far more than ordinary ability, although instructive and interesting, has not, so far as this case is concerned, materially changed it.

The accident of a judge's confidence in his opinion has but little to do with the propriety of judicial discussion. The circumstances attending this litigation, the strong feeling on the part of the complainants, and the fact that a state tribunal of the highest respectability and influence has granted restraining orders, would render a brief, unreasoned judgment improper.

Although nearly all which will be said is familiar to the experienced lawyer, yet from the probability that its reproduction here will bring it before those classes more immediately the subjects of this and similar laws, I deem it a duty to do what otherwise I should say was wholly unnecessary. If the argument seems extended, it is conceded that collateral circumstances, and not the condition of the law, warrant it.

I regret, now that I conclude to refer to a few books to justify my judgment, that the learned counsel cited no decisions upon the first subject to be discussed. The complainant assumed that a clear violation of the statute, resulting in an excessive assessment, rendered the proceeding void, and so not a tax within the meaning of the inhibitory statute. Counsel for the government assumed as fully the jurisdiction of the assessor, and treated the degree of illegality as immaterial. Since the argument, I have been continuously engrossed in other judicial duties, and have been able to command but few hours for the examination of books. I am compelled, therefore, in order to comply with the request for an early decision, to refer to those which the accidents of former briefs render accessible. They are not, perhaps, the most applicable, and such in all cases as a better opportunity would have selected. They do, however, illustrate the reasons upon which the decision rests, and are confidently referred to as in accord with a large and prevailing class of judgments to which they belong.

Section 19 of the act of July 13, 1866, as amended in 1867, provides "that no suit to restrain the assessment or collection of a tax shall be maintained in any court."

If a statute authorizes an officer to assess generally, excepting in plain terms certain persons and things, and the persons and things are nevertheless taxed in violation of law, has not the officer so exceeded his power as to render his judgment void? Can it, in any sense applicable here, be said that he has jurisdiction of the subject? Courts, in reference to the same facts, have answered this difficulty according to the purpose for which the question is asked. If it comes from an officer executing a warrant fair on its face, the reply upholds the process and protects him, although the law forbade its issue. In these cases it is said the general subject of taxation, and the judicial duty of determining, either upon view or inquiry or evidence, who and what are within the law, is imposed upon the assessor; and an erroneous decision does not for all purposes render proceedings based upon it void. If an assessment made in the same circumstances is relied upon to divest a title through a tax sale it is declared to be invalid. Owing to the poverty of language, the same literal reason is given in both instances. The innocent officer is protected because the assessor has jurisdiction, and the title is void because he had none.

It is said a court of equity has not jurisdiction to decree damages, save as an incident; yet, if a defendant does not demur or object at the first opportunity, the jurisdiction is conceded. Here the term means something wholly different from its sense when we affirm that the same court has no jurisdiction to try a citizen for murder, or dissolve a corporation upon quo warranto. And this is not peculiar to a court of equity. It is an axiom in this department of the law, that consent cannot confer jurisdiction, and yet, without stopping to call it an exception, numerous decisions say that even silence will waive jurisdictional objections. If the power of special tribunals is made to depend upon preliminary proofs, and on writ of error it appears they are wanting, it is said they are jurisdictional facts, and a reversal follows. In the same class, if the record does not affirmatively show the error, and defendant has appeared, or the record comes collaterally in question, it is said, as jurisdiction appears without them, their proof will be presumed. [Hogg v. Water Co., 8 Cush. 69.] [2] Doughty v. Somerville & E. R. Co., 1 Zab. [21 N. J. Law] 443; Road in Moore Tp., 5 Har. [17 Pa. St.] [2] 116; Wight v. Warner, 1 Doug. (Mich.) 384; Kennett's Petition, 4 Fost. [N. H.] 141; State v. Richmond, 6 Fost. [N. H.] 232; [10 Wash. 167;] [2] Malone v. Clark, 2 Hill, 657; Embury v. Conner, 3 Comst. [3 N. Y.] 511; Com. v. Henry, 7 Cush. 512; Little Miami R. Co. v. Perrin, 16 Ohio, 479.

Numerous judgments fail to indicate the

---

[2] [From 11 Int. Rev. Rec. 197.]

limitations with which they employ this general term. Its use in such manifold significations causes an appearance of conflict beyond what really exists. Confusion is created only when these broad generalities are quoted and sought to be enforced where they have no application.

These illustrations might be greatly multiplied; they are entirely familiar, and have been noticed only as the more brief mode of answering several elementary books where abstractions are found, the literal application which would warrant the assumption of the complainant's counsel that an assessment in violation of law was a usurpation of jurisdiction.

Not only is this term employed in so many senses that its signification is always to be sought in the circumstances of its use, but no judge has been successful in embodying in a sentence a definition of jurisdiction, universally applicable, even to a single class of cases. It is always necessary to restrain the generality, or help out the too limited meaning of words. The definition has always to be defined. No such attempt will be made here. Indeed, the necessities of this case will carry us nowhere near the boundaries of the doctrines which uphold the doings of quasi judicial officers. Announcing a rule for the facts in these cases only, it is sufficient that a statute has authorized the assessor to entertain the general subject of taxation, that it was in fact entertained, and a judgment, lawful or unlawful, was rendered concerning it. So far as this judgment was concerned; whether lawful or unlawful, is deemed quite immaterial.

The following judgments show that similar inhibitions have been employed in all cases where the proceedings were not void, and also as pointedly that those in this case are not so: In Chegary v. Jenkins, 1 Seld. [5 N. Y.] 381, a building; clearly exempt by law, was assessed, and the collector sued for seizing property. Ruggles, C. J., says: "The assessor acted judicially in deciding whether the plaintiff's building was a dwelling, or exempt as a seminary of learning," and proceeds to show that, although not for all purposes conclusive, it was not void, and protected the officer. On page 382, it is said the remedy is under the provisions for appeal.

In Van Rensselaer v. Cottrell, 7 Barb. 129, Harris, J., says: "If the lands were in the town, that gave the assessors jurisdiction of the subject matter. In making the assessment they performed a judicial act, and no matter how much they erred in its performance, it canot render their action void." The officer collecting the tax was protected. He cites 1 Hill, 130, 3 Denio, 117; and Van Rensselaer v. Witbeck, 7 Barb. 133. The thing assessed was not, in fact, subject to taxation.

The following judgment is peculiarly applicable to some of the positions taken in argument in this case: In Van Rensselaer v.

Witbeck, 7 Barb. 133, a statute provided that if an affidavit was presented of an overassessment, it, and not the valuation, should be the guide for taxation. In deciding that trespass would not lie, Judge Harris (page 137) says: "The assessors were to ascertain who and what are to be taxed. This was within their jurisdiction, and as they act judicially, their decision cannot be questioned collaterally, though they proceed irregularly. Thus, if they should refuse to adopt the sum stated in the affidavit as required by the statute, it might furnish ground for reversing their decision, but would not render the assessment void." He remarks that the departures from the statutory requisites were gross and palpable.

In People v. Albany Common Pleas, 7 Wend. 485, a court martial issued a warrant to collect a fine where the defendant had not been summoned. It was insisted that the proceedings were void, and the statute prohibiting replevin did not apply. The court says: "If it appears by the warrant that the officer is authorized to collect any tax assessed, or fine, replevin is not the remedy to correct his mistakes or trespasses. The warrant authorized the officer to take the property of Hammond. Whether he had a right to take it cannot be inquired into in such an action. The legislature have forbidden it."

The intimation that the officer would be a transgressor in this case is probably inadvertent, as the same court, in Savacool v. Boughton, 5 Wend. 178, had on full consideration decided the contrary. There a judgment was rendered against the plaintiff, without summons, in a court not of record, and the officer who executed the final process was sued. It was held that although the proceedings were void as between justice and party, still, when the process was fair on its face, and gave no notice of the facts showing want of jurisdiction of the person, the officer was protected. The former cases in that court are reviewed. Suydam v. Keys, 13 Johns. 444, which held a tax collector liable for executing a warrant which described plaintiffs as residents, when in fact they were non-residents, and so not subject to tax, is dissented from. Wise v. Withers, hereafter noticed, 3 Cranch [7 U. S.] 331, is also disapproved. Beach v. Furman, 9 Johns. 229, is approved. It is held that the assessment of a woman not liable to highway duty was not a void proceeding.

Statutory prohibitions in different circumstances, all applicable here, were enforced, although proceedings were in violation of law, in Keyser v. Waterbury, 7 Barb. 650; Perry v. Richardson, 9 Gray, 216; Macklot v. Davenport, 17 Iowa, 383. In Pott v. Oldwine, 7 Watts, 173, replevin was brought for property seized upon the warrant of a court martial. Plaintiff was not a member of the troop, and so not subject to duty. As there was power to judge in the class of offenses, although gross irregularities characterized the

proceedings, and the plaintiff was not in fact subject to duty, it was said the action could not be maintained. The same argument made here was there urged. In O'Reilly v. Good, 42 Barb. 521, property was seized upon a warrant issued by the United States assessor. It was claimed the law was unconstitutional, and replevin brought. The court set aside the writ on motion, saying that whether the New York statute prohibiting replevin applied to the case of a federal tax or not, it was unfit such an action should be maintained. It would defeat, if tolerated, the collection of the national revenues.

The position of the complainants is quite conceded, that if the proceedings are nullities the statute would have no application. Such are the decisions in the same state tribunals from which we have quoted. The two classes are by no means in conflict. See Le Roy v. East Saginaw C. R. Co., 18 Mich. 233; Stockwell v. Veitch, 15 Abb. Pr. 412; Mills v. Martin, 19 Johns. 7; Macklot v. Davenport, 17 Iowa, 383. The concession of the rule contended for is made in most of the judgments when the statute is applied.

Nearly every state in the Union has similar laws, or has decided without them that the common law forbids such a process where property is in custodia legis. Numerous decisions applying, or refusing to apply them, have been made, all going upon the same principle. If there is general jurisdiction in the class of cases involved, and the tribunal has judicially determined that the case is within it, the irregularities, however gross, do not interfere with the application of these prohibitory laws.

The references thus far have been selected because they were applications of similar statutes. A few additional ones will be noticed upon the general position that the assessor, within the most limited sense of the rule, had in this case jurisdiction of the subject. Telfourd v. Barney, 1 G. Greene, 581, well lays down the rule. The petition to sell land omitted a statutory requisite. The court, adopting what is said in several federal decisions, say: "They came into court and brought in the subject matter, and the court acted. It matters not that it should have been otherwise. Had it power to act at all? Could it have sustained a demurrer to the petition, and given judgment for the defendants? This gives jurisdiction of the case," &c.

Sheldon v. Newton, 3 Ohio St. 494, arose upon a sale of land by administrators. On pages 498, 499, the familiar definition of jurisdiction in U. S. v. Arredondo, 6 Pet. [31 U. S.] 709–712, and kindred cases, is adopted, and after explaining this definition by saying that in all cases this jurisdiction must be made to appear by showing that the law has intrusted the tribunal with the power to entertain the complaint, that such complaint was presented, and that under it the person or thing has been brought before it, the court say: "We wholly dissent from the position taken in argument that the jurisdiction of the court can be made to depend upon the record's disclosing such a state of facts as to warrant the exercise of such authority." Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 449, Grignon v. Astor, 2 How. [43 U. S.] 339, and the other cases in the federal courts, show that if the general power of judgment is given, and the court decides upon the sufficiency of the preliminary proof which is necessary rightfully to launch it, an error in this regard does not render its judgment void. It is decided in Paine v. Mooreland, 15 Ohio, 435, that if the court acquired jurisdiction by issuing process on attachment, and seize property, although it violated the statute and rendered judgment without publication, it was not void. It approves and applies the doctrines of Voorhees v. Bank of U. S., ubi supra. The court says decidedly the statute forbade the judgment without publication. For many purposes, ex parte statutory assessments and sales may be attacked where a similar proceeding after service of process by a court could not be. But the difference does not consist in the fact that one is void, and the other not. Where all is ex parte and summary, with no litigation or appeal, the statute must be complied with, in order to divest a title. It is a rule of protection applied in that class of cases only. But even in those, notwithstanding irregularities, an officer executing the process is not subjected to action. He is protected because there is jurisdiction of the general subject to which his warrant relates, and whether it emanates from a court or an assessor, the proceedings are not nullities if jurisdiction in this broadest sense exists.

The case of Wise v. Withers, 3 Cranch [7 U. S.] 331, we are aware, sustains a different rule. In that a court martial invested with power to try offenders for neglect of militia duty, in due form convicted the plaintiff. The supreme court, holding that he was exempt under the statute, declared the judgment void for all purposes, and the innocent officer who executed the process liable in trespass. This case I do not find directly overruled in the supreme court, but a long series of judgments wholly at war with it have fully established in that court a different doctrine. It would not now hold any party, much less an officer, liable in trespass, when a court charged by law with the duty had judicially determined, upon full hearing, that a person or thing capable in its own nature of being such was the subject of assessment or fine. It has very frequently been dissented from by eminent judges and authors. It is somewhat singular that in Dyer v. Horner, 20 How. [61 U. S.] 65, its correct general definition is twice referred to, without any notice that its application by Chief Justice Marshall was diametrically opposed to the argument it is there quoted to illustrate. I feel warranted in assuming, notwithstanding Wise v. Withers, that the su-

preme court would not hold the collector in this case liable in trespass, even though the assessor directly violated the statutes, and assessed for a fictitious deficiency, when none in fact existed.

It is said, in answer to this, that the act of 1867 is unconstitutional; that it denies due process of law, and substantially takes the citizen's property for public use without compensation; that it unlawfully confers on others that judicial power which, under the constitution, can be confided to the courts alone.

In order that we may appreciate fully the inapplicability of this grave charge against a statute more kindly and liberal in its provisions, so far as the court's examinations have gone, than that of any state in the Union for similar purposes, let us see what is its utmost effect. How far does it change the common law? By that law the citizen could not replevin property seized for the collection of a tax. It was deemed impolitic to suffer such a remedy, and the laws of the states, nearly all of which have enacted them, declaring the same thing, are but assertions of this principle. According to the English equity, an injunction would not go in any case at all analogous to that at bar. Wide as the departures are from these principles in some of the state courts, all disclaim the jurisdiction per se. By the rarity and exceptional character of their interposition they authorize the assertion of the general rule that there was no remedy by injunction to prevent the collection of an illegal tax. Irrespective of all legislation, there was neither replevin nor injunction. The wrong must be submitted to and suit at law brought to recover damages for its infliction.

In what, then, is the constitution or the general principles of good government violated? In order to save the citizen the delay and expense of a suit to recover back the payment which he deems unlawful, a speedy and inexpensive appeal is given to the commissioner, who is directed to refund all moneys paid upon illegal assessment. If dissatisfied with his decision, the citizen may sue in the courts, which, up to that of last resort, are open. He may sue his government as freely as his neighbor, and when judgment is recovered, the national treasury is devoted to its payment. Neither judicial forms nor trial by jury is denied.

When it is added that provisions for appeal and review, far less generous and protective than these, have, in the state tribunals, without exception, been adjudged, upon common law grounds, to be exclusive, and that the statute prohibiting an injunction in this case was wholly unnecessary, enacted only as a politic and kindly publication of an old and familiar rule, it would seem as if nothing was left for doubt or discussion.

The argument has not, however, been put in this form for the purpose of resting it there. If we have misconceived the nature of these remedies never so much, there is still a broad margin in the constitutional power of the government ample to cover any possible difference.

A short history of this subject in the national tribunals will show there is nothing left for this court to discuss on principle. All its modifications are settled by express adjudication.

Originally, actions to recover back money exacted for duties illegally claimed to be due were sustained in the national courts. Elliot v. Swartwout, 10 Pet. [35 U. S.] 137; Bend v. Hoyt, 13 Pet. [38 U. S.] 263; Greely v. Burgess, 18 How. [59 U. S.] 413, and other cases, so decide. The act of March 3, 1839 [5 Stat. 348], provided that all moneys should be immediately paid into the treasury, and authorized the secretary to refund all over-payments. There was no express inhibition of suits against the collector. But in Cary v. Curtis, 3 How. [44 U. S.] 236, it was held that its effect was to prevent them. In Curtis v. Fielder, 2 Black [67 U. S.] 461, the general doctrines of Cary v. Curtis were re-affirmed. On page 479, it is said, under the act of 1839, importers were not without remedy. If it was shown more money was paid than was due, the secretary of the treasury was authorized to refund it. The constitutional principles which begat a disagreement in Cary v. Curtis were more intelligently discussed and settled in Murray v. Hoboken Land, etc., Co., 18 How. [59 U. S.] 272. Under the act of 1820 [3 Stat. 592], authorizing the secretary of the treasury to issue a distress warrant against defaulting collectors, land had been sold. The proceeding was attacked as unconstitutional, because no hearing was given the defendant, and no trial by jury. It was said to be conferring judicial power upon other than the courts. The law, after the most full consideration, was held to be valid. It was shown that like proceedings had immemorially existed in England, and since magna charta. The distinction was between proceedings to collect public dues, and suits for enforcing private rights. Numerous instances of similar laws are cited from the several states having constitutional provisions like those quoted and relied on by the plaintiff in error.

The unreasonable extension of this doctrine is carefully limited as follows: "To avoid misconstruction upon so grave a subject, we think proper to state we do not consider that congress can withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at common law or in equity or admiralty; nor, on the other hand, can bring under the judicial power a matter which, from its nature, is not a subject for judicial determination. At the same time there are matters concerning public rights which may be presented in such a form that the judicial power is capable of acting on them, but which congress may or not bring within the cognizance of the courts of the United States, as it may deem proper."

Philadelphia v. Collector, 5 Wall. [72 U. S.] 730, was an action to recover back money paid for taxes. It is said that, but for the authority to sue, given in the statutes, the remedy

would have been confined to an appeal to the commissioner. Justice Clifford says: "The direction of the statute is, without exception, that all judgments shall be paid by the commissioner with costs and expenses of suit. Parties compelled to pay an illegal assessment ought to have a convenient remedy to redress the injury; and inasmuch as it is enacted by congress that no suit shall be maintained in any court to restrain the assessment or collection of taxes, it is believed there is no more appropriate or effectual remedy known to the common law than the action of assumpsit for money had and received as in this case." In Nichols v. U. S., 7 Wall. [74 U. S.] 122, the plaintiff having paid money conceded not to be due, but having omitted to protest, as provided by the statute, in order to maintain a suit at law, he brought his action in the court of claims. In deciding that there was no liability on the part of the government, and that the claimant was wholly remediless (pages 126 and 127), after referring to the rule that the government cannot be sued unless a suit is in some form authorized by statute, it says that in this instance, allowing suit at all, even after protest, was "a matter of beneficence; as it confided to the secretary in the first instance to decide upon the amount of duties, so it might have made him final arbiter in all his disputes concerning them." The decision is full that in this class of cases it is competent to confine the remedy for wrong to the adjudication of the government officers. On pages 130 and 131, it is said, "If a party complaining of an illegal assessment does not appeal to the court, he is also barred of all right to sue; and he is also barred unless he does so within twelve months. Can it be supposed that after congress has carefully constructed a revenue system, with ample provisions to redress wrongs, that it intended to give the tax-payer and importer a further and different remedy?" It is added that the mischief which would result, forbids the idea that any other than the prescribed modes are open for the redress of wrongs.

These judgments leave nothing to decide here. The power for this legislation is asserted, and its policy amply vindicated.

The same motive which has induced this seemingly unnecessary argument thus far, prompts the pursuit a little further of the suggestion that these principles are not peculiar to the federal government and courts. They have been applied in every state where questions have been raised by the citizen in reference to any governmental right.

That special remedies by appeal and review, for the correction of erroneous taxation, are always held to be exclusive, and cut off by implication all actions at law and in equity, see Little v. Greenleaf, 7 Mass. 239; Howe v. City of Boston, 7 Cush. 273; Boston Water-Power Co. v. City of Boston. 9 Metc. [Mass.] 199; 13 Metc. [Mass.] 380; Kimble v. Whitewater Valley Canal Co.. 1 Cart. [Ind.] 285: 2 Seld. [6 N. Y.] 258; 1 Seld. [5 N. Y.] 382.

Similar judgments are very numerous. They apply the rule in equity as well as at law. In Hughes v. Kline, 30 Pa. St. 227, a bill was filed to be released from over-taxation, and dismissed upon the ground that the statute had given a remedy by appeal. Macklot v. Davenport, 17 Iowa, 384, was like it. The bill was dismissed because a special remedy was given, and the cases at law cited and their rule applied. Deane v. Todd, 22 Mo. 92, dismissed a bill for like reasons. There was in neither of these, nor the many other similar judgments, any express prohibition, as has been unnecessarily made by congress in this case.

It has been again and again decided, under every variety of state constitution intended to secure "trial by jury," "due process of law," and "the inviolability of private property," that the political power may appropriate it by any summary mode which the wisdom of the legislature may prescribe, and that neither the novelty nor the injustice of the form will warrant judicial interference. The following are but a small portion of the numerous judgments establishing the principle, and illustrating the tendency in our country to question and demand the reiteration of the oldest and best settled governmental powers: In Ohio this has often been ruled. Mercer v. Williams, Wright, N. P. 132; Bates v. Cooper, 5 Hammond [Ohio] 115; Willyard v. Hamilton, 7 Ohio, 404; Symonds v. City of Cincinnati, 14 Ohio, 147; 12 Ohio St. 105. It is repeatedly said in that state that these constitutional provisions have no influence upon the power of the state to prescribe rules by which to condemn or tax the citizens' property. So, also, Rubottom v. McClure, 4 Blackf. 505; Hankins v. Lawrence, 8 Blackf. 266; McCormick v. President, etc., of Town of Lafayette, 1 Cart. [Ind.] 48; Whitewater Valley Canal Co. v. Ferris, 2 Cart. [Ind.] 331; Bloodgood v. Mohawk & H. R. Co., 18 Wend. 9; Baker v. Johnson, 2 Hill, 342; People v. Hayden, 6 Hill, 359; People v. Canal Com'rs. 5 Denio, 401; Rexford v. Knight, 15 Barb. 627; Swan v. Williams, 1 Gibbs, 442; Mason v. Kennebec & P. R. Co., 31 Me. 215; Ligat v. Com., 19 Pa. St. 456; Yost's Report, 17 Pa. St. 524; People v. Wells, 12 Ill. 102; Bradley v. New York & N. H. R. Co., 21 Conn. 305; Clark v. Saybrook, Id. 313; Mayor, etc., v. Scott, 1 Pa. St. 309; Jackson v. Winn, 4 Litt. (Ky.) 322; Gashweller v. McIlvoy, 1 A. K. Marsh. 84; Raleigh & G. R. Co. v. Davis, 2 Dev. & B. 451; Charlestown, B. R. Co. v. Middlesex, 7 Metc. [Mass.] 78; People v. Michigan S. R. Co., 3 Mich. 496; Smith v. McAdam, Id. 506; Mt. Washington Roads Petition, 35 N. H. 135.

If more plenary forms are accorded by the judicial tribunals, these and a far greater number of like determinations decide that it is only because local and exceptional statutory or constitutional provisions expressly secure them. In no instance have these old and familiar clauses been held to secure such

results. Michigan, Vermont, New York, and other states, have laws providing that if property is seized by the collector, in the possession of a delinquent tax-payer, the true owner shall have no remedy for it against the officer or the government. He must look solely to the person for whose tax it was taken. In others it is provided by law, or ruled upon principle, that if judgment be rendered against a city or town, any citizen's property may be seized, and he be remitted for reimbursement to a suit against the municipality. One of these laws was attacked in Sears v. Cottrell, 5 Mich. 251. It was claimed that to subject the property of one man to seizure for the tax of another, for no other reason than because it might accidentally be in his possession, was in violation of the causes securing "trial by jury" and "due process of law." The able opinion of Justice Christiancy is one of the most interesting and instructive to be found on this subject. The distinction is drawn between private litigations and those proceedings in which the political power enforces its claims. Its full history and able argument are full to show, that in practice these constitutional provisions never have been, and that public policy forbids they ever should be, applied in the assessment and collection of the public revenue. In Sheldon v. Vanbuskirk, 2 Comst. [2 N. Y.] 478, a similar statute of New York is referred to in illustration of this general principle.

The whole field of the police power is fertile with pertinent illustrations of the utter inapplicability of these constitutional generalities, when the public asserts a right. In People v. Hawley, 3 Mich. 330, the defendant owned extensive breweries, which were rendered worthless in a day, by an enactment making his lawful business a crime; and other cases in that and other states upon similar statutes, and those in reference to destroying property in cases of conflagration and pestilence, and the promotion by taxation of public improvements which, by indirect injuries, practically destroy one man's business and give it to another, are familiar instances in which these general provisions have been invoked again and again, only to have it repeated that they are of no significance, when in any form this political right is exercised. See 18 Wend. 127; 2 Denio, 461.

A strong illustration of how firmly judicial opinion is fixed in favor of maintaining to its full extent this necessary public power, is found in the stringent construction in favor of the government, and against the citizen, which has been always given to the clauses in our national and state constitutions, providing that property shall not be taken for public use without compensation. It may be injured indefinitely, and under this clause it has been held no compensation is due. A private agreement would not be thus interpreted. See Sedgw. Const. Law, 524.

Cooley on Constitutional Limitations was cited to show that the governmental interpretation of the statute might carry even the taxing power beyond its limit. It is not supposed much reliance was placed upon this; and it would not be noticed, did not the decisions in reference to the absolute immunity of the legislature from all judicial control in the whole matter of taxation furnish another numerous list of examples, showing that these constitutional protections do not control the exercise of power on the part of the government. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316; People v. New York, 2 Black [67 U. S.] 620; [Bank Tax Cases] 2 Wall. [69 U. S.] 200, 3 Wall. [70 U. S.] 573, and many other federal judgments, assert the right of taxation, even to the limit of destroying the business or prohibiting indirectly the thing assessed. Fifield v. Close, 15 Mich. 505; People v. Mayor of Brooklyn, 4 N. Y. 425–427; Scovill v. City of Cleveland, 1 Ohio St. 126; Maloy v. Marietta, 11 Ohio St. 638; Reeves v. Treasurer of Wood Co., 8 Ohio St. 333; Armington v. Barnet, 15 Vt. 749; Weister v. Hade, 52 Pa. St. 478,—are but a small portion of the state decisions, which assert in reference to their legislatures this unlimited and wholly irresponsible power of taxation. The courts have no possible control over it. No matter how unjust or severe upon particular interests and persons, unless the imposition is at war with some special constitutional clause in reference to the subject, the provisions relied on in this case have never been held to authorize the interference of courts. Sedg. Const. Law, 502, 509, and 7 Cush. 53, 82.

Whenever the government seeks the property of the citizen, exercising the right of eminent domain, or by taxation in any of its numerous forms, the processes for seizure and assessment are, in the most plenary sense, within the discretion of the legislatures. It has been often said that the only correction for what is harsh and unjust is to be sought in the nature of our institutions. Those who study this history are not advocates for decreasing a power, without which no people ever have been continuously protected and prosperous.

The bill must be dismissed. Decree accordingly.